# WINDSOR COUNTY.

## FEBRUARY TERM, 1841.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    " STEPHEN ROYCE,
    " ISAAC F. REDFIELD, } *Assistant Justices.*
    " MILO L. BENNETT,

## THEODORE HINSDALE *v.* ALDEN PARTRIDGE.

Where a contract is made by one person, which in some sense ultimately concerns others, the question, whether the one contracting is personally bound by stipulations contained in it, is one of intention mainly.

In such case, if the party contracting have no authority from the principal to make such contract on his behalf, or if the other party knowing all the facts consent to look to his credit, or if he require the assurance of the agent, he will be personally liable upon the contract.

The construction of a contract depends upon its terms, the subject matter, and the circumstances attending the transaction, or which were then anticipated, and is not affected by the occurrence of events not then apprehended by either party.

GENERAL INDEBITATUS ASSUMPSIT.

Plea, *non assumpsit.*

The plaintiff sought to recover in this action for boarding cadets attending the defendant's military academy at Middletown, Connecticut, under a contract relating thereto.

In the county court, the case was referred, by agreement of parties, to a referee to take the accounts of the parties and report the facts relating thereto.

The referee afterwards reported, in substance, as follows :
The plaintiff furnished board for defendant's scholars, or cadets, on the credit of defendant's school from October 3, 1825, to September 1, 1828, to the amount of $49,979.79. A portion of this account was furnished under a written contract between the parties of the following tenor ;

'Articles of agreement between Alden Partridge and Theo-
'dore Hinsdale both of Middletown, Connecticut.    Said
'Hinsdale is to furnish the cadets of the military academy
'at said Middletown with boarding at the house built for that
'purpose, for one year, from and after the 4th day of De-
'cember instant, to commence about the middle of January
'next, at the expiration of the vacation, to be fed with good
'and wholesome food, with a reasonable plenty but not ex-
'travagantly, to be well cooked and in good order, and at
'such times in the day as said Partridge may choose.    Also,
'to furnish boarding for not less than eighteen or more than
'twenty beneficiaries, but to be the same number as last
'year, who in consideration of their board are to clear the
'tables in the dining halls after meals and carry such of the
'furniture as may be necessary and place on the table on
'each side of the dumb waiter, and such other as may be
'necessary to carry to the west side of the hall ; also, to
'wait on the tables during the time of meals, and further,
'each beneficiary is to cut and split, as said Hinsdale may
'direct, three cords of wood in the course of the year.    Said
'Hinsdale to have the use and improvements of the land in
'the rear of the academy, as last year.

'As respects compensation for boarding the cadets as afore-
'said, said Partridge is to pay to said Hinsdale at the rate of
'one dollar and seventy-two cents per week, for each one
'during the time of his boarding.    In this sum is included the
'rent which was agreed to be paid on the erection of the
'boarding house built by John and Daniel Hinsdale, which
'agreement is left for safe keeping in the hands of John L.
'Lewis, Esq., and all past rent is to regulated by said wri-
'ting.    No payment for board is to be considered due until
'the end of each quarter of the year for said quarter, when
'sufficient funds are to be provided for said Hinsdale's
'wants to furnish the boarding house for another quarter as
'he may need them.    And in case the parents or guardians

'of said cadets delay to pay their bills in season it is un-
'derstood that said Partridge is not to pay out of his own
'funds for that purpose, except for the necessary expenses
'of the house as aforesaid. At the expiration of the year
'the amount of all boarding bills of those, whose parents or
'guardians have failed or become insolvent, are not to be
'paid by said Partridge except such proportion as he has
'received, to be averaged on the whole amount of their bills,
'and, in case of final loss on said bills, said Hinsdale is to
'bear his proportion of loss which his board bill amounts to,
'in proportion to the whole amount of their several bills at
'the academy and receive the like proportion of all payments
'on said insolvent bills whenever paid to said Partridge.

'At the close of the year, should said Hinsdale leave the
'boarding house, said Partridge is to purchase at a fair price,
'all the moveables, cooking utensils, crockery, &c., in the
'house which are necessary to manage and carry on the same
'as a boarding house.

'Should it be required by said Partridge, the sick cadets
'are to be kept at the boarding house in the best manner
'said Hinsdale is capable of under all circumstances, until
'able to return to their duty, at a fair price. And all do-
'mestics, servants, and others employed in and about the
'boarding house are to be of good moral character, and to
'conform to all the police regulations of the academy.

'Middletown, December 2, 1826.'

A portion of the board was furnished under a verbal con-
tract, prior to the time when the written one took effect, but
the verbal contract was, substantially, the same as the written
one above set forth.

The following articles were among the printed regulations
of the defendant's academy, established and published by
him in 1825.

'Article 5. Every candidate for admission, whose parents
'or guardians reside more than one hundred and fifty miles
'from Middletown, will be required, when he joins the insti-
'tution, to deposite in the hands of the superintendant, two
'hundred dollars, and, at the expiration of six months, an ad-
'ditional sum of $100.00, must in like manner be deposited.
'The superintendant will be accountable for all the money
'thus deposited.

'Article 7. During every succeeding year, after the first, 'an advance will be required, at the commencement of the 'year, of one half the estimated expenses of the year, and a 'like amount at the commencement of the second half year. 'The amount to be made out as stated in article 5.

'Article 8. Those, who reside at a distance not exceeding 'one hundred and fifty miles, will be required to pay the 'first quarter's expenses in advance, and afterwards to settle 'the bills at the expiration of each quarter.'

It was admitted that the plaintiff had knowledge of these regulations when they were promulgated in 1825, but no testimony was introduced to show that they were either observed or disregarded in the settlement of the bills.

On the first day of May, 1830, the parties stated their accounts, and the balance then found due to the plaintiff for board was $3,736.67, which was to be paid according to the terms of the contract of December 2, 1826, above set forth. Since that time there had been paid to the plaintiff, at different times, the sum of $1,522.97.

The referee reported particularly the amounts due to the defendant from the respective cadets who had attended the defendant's academy, their parents or guardians, at the time when the plaintiff ceased boarding the cadets, making the sum of $19,924.05 ; that, of this sum, $4,517.00 was for board, and that the loss on the whole amount thus due was $8,500.62.

Other facts than those above stated were reported by the referee, but, as they were not passed upon in this court, it becomes unnecessary to state them. The facts above stated, and what are contained in the opinion of the court, sufficiently present the questions here decided.

Upon the coming in of the referee's report, the defendant insisted that he was not liable to the plaintiff except so far as he had received money for boarding the cadets, and that the plaintiff should bear a proportionate share of the loss from bad debts. But the county court decided that the plaintiff was entitled to recover the balance due to him from the defendant, appearing from the statement of their accounts by the referee, and interest, without any deduction on account of such losses, except such as it was stipulated in the

contract should fall upon the plaintiff, and rendered a judgment in favor of the plaintiff for such balance.

The defendant excepted to the decision.

*Aikens & Edgerton,* for defendant.

The plaintiff claims to recover of the defendant for the board of certain cadets of the defendant's military academy.

As the board was furnished under a written contract, a question is made whether the plaintiff is entitled to recover, and if so, to what amount.

The defendant insists that he is liable only so far as he has received moneys on account of such board, which he has not paid over to the plaintiff, and, that the burthen of proving the defendant's receipt of the money rests with the plaintiff.

By the terms of the written contract the defendant agreed in effect to pay for the board when he received money for the purpose from the parents or guardians of the cadets, and had the plaintiff declared specially upon the contract, he must have averred and proved the receipt of money by the defendant, and by changing his mode of pleading from a special to a general assumpsit, the plaintiff does not change the burthen of proof. 2 Sarkie's Ev. 95.  2 Comyn on Contracts, 5, 6.  1 Chitty's Pl. 351–2.

The defendant is not liable in this action on account of any supposed neglect on his part to make collections.

1. He never assumed any obligation to make the collections, and even if he had, the action in order to a recovery should have been brought upon the promise to do so, with an averment of the negligence, supported by proof on the part of the plaintiff.

2. Hinsdale had a right of action against the parents and guardians of the cadets, and was as much entitled to make collection as the defendant.

*C. Coolidge,* for plaintiff.

I. The action is properly brought.

II. The plaintiff insists that, upon the construction of the contract for boarding, he was not to share in losses, except in such as should arise from the insolvency of those parents or guardians who should have become insolvent *within* the year, or time of boarding.

WINDSOR,
*February*,
1841.
───────
Hinsdale
*v.*
Partridge

If, however, the insolvency contemplated should be deemed to extend to cases of *final* insolvency, it is then insisted,

III. That the plaintiff should be held to the exercise of the highest degree of diligence in his efforts to collect the accounts, for the entire control of the whole subject matter of the contract was, and still is, in the defendant. He, only, could admit scholars, and he, only, discharge them. He, only, could-collect, or control the collection of the accounts.

And, therefore, it is incumbent upon the defendant, 1. To show what were cases of insolvency ; 2. To show that the accounts in such cases have not been collected ; 3. That he has used the highest degree of diligence in attempting to collect them and has failed.

IV. The plaintiff is entitled to interest from the time of stating the account.

The opinion of the court was delivered by

REDFIELD, J.—The only question raised in the present case is, whether the defendant is to be considered personally bound by all the stipulations in his contract to the plaintiff. Upon this subject each case must rest upon its own peculiar grounds. The decision of one case is hardly a guide for another, unless the cases, in their leading points, are identical. The recent English cases, and many of the American cases seem to incline very strongly to hold the person contracting personally responsible, unless he be a public agent, or where he had full authority to make the contract on behalf of another, and there was no intention to make himself personally liable. In a case like the present, it must be considered mainly a question of intention between the parties. This intention must be determined by the language of the contract, with reference to its subject matter and contemporaneous circumstances. In the exposition of contracts, the terms in which they are expressed are entitled to paramount consideration.

The terms here made use of are undoubtedly well calculated to induce a belief, that the defendant did intend to assume a personal obligation. The contract is entitled "Articles of agreement between Alden Partridge and Theodore Hinsdale." The plaintiff was to furnish board to all the cadets " and the *said Partridge is to pay the said Hinsdale* at the rate of $1.72

per week for each." " No payment is to be considered due until the end of the quarter." It is then provided " that if the parents or guardians neglect to pay the bills of the cadets in season, the defendant is not to pay out of his own funds, except for the necessary expenses of the house." " At the end of the year the bills of those who have failed or become insolvent are not to be paid by said Partridge, except such proportion, as he may have received, to be averaged on their whole bills." " And in case of final loss *on said bills,* plaintiff is to bear his proportion of the loss." There being no other stipulation found in the contract imposing the risk of any ultimate loss upon the plaintiff, it would seem natural to conclude, that other losses were to fall upon the defendant. *Expressio unius exclusio alterius.* For the provision in regard to final loss " *on said bills,*" as it immediately follows the clause in regard to bills of those whose parents or guardians have failed during the year, can only refer to those.

I think, too, that the circumstances attending this contract should induce us to adopt the conclusion that the parties to it did consider the defendant personally bound by its stipulations.

This was a military school, set on foot by the individual enterprise of the defendant. He furnished every thing for the use of the cadets, unless it be the board. They were not allowed to have funds or to make contracts. Neither the cadets, nor their parents or guardians, in regard to any of the supplies furnished, knew any one but the defendant. The regulations of the school, which were known to plaintiff as well as defendant, required advance pay in most instances, and, in all, pay at the close of the current quarter. Had these regulations been enforced by defendant, as upon every principle of good faith the plaintiff had a right to expect they would be, the sum which is now due the plaintiff would have been in the hands of the defendant, or else these bills would never have accrued. As the plaintiff had no control over these regulations, either to enforce or dispense with them, the defendant, by dispensing with their enforcement, did, on every principle, aside from the contract, make the debts his own. The defendant, too, admitted whom he pleased to the school and thus, in effect, had the control of plaintiff's table. The plaintiff could not be considered as having any claim upon the

parents or guardians of the cadets, as he had consented to board them solely upon the credit of the defendant, knowing all the facts. The school was in effect a perfect garrison, the defendant the sole and absolute governor thereof, and the plaintiff his mere servant. Under such circumstances it is but natural to conclude that the plaintiff would expect the personal contract of the defendant, and that the latter would readily give it, as he did. Now that circumstances have intervened, which were not then anticipated, it is not for the court to impose upon the parties such a contract as they would have made, had they known what we now know. We can only enforce the contract which they did in fact make.

The judgment of the county court is affirmed.