NORTHERN TRUST COMPANY *v.* ALBERT G. PERRY.

May Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed November 4, 1931.

*Wilson & Chamberlain* for the plaintiff.

*Elwin L. Scott and Wilson, Adams & Keyser* for the defendant.

SLACK, J.   Flora Perry Ullery, formerly of Chicago, Illinois, died in May, 1915, leaving a will which was duly probated in Cook County, Illinois.   After making several specific bequests, she bequeathed the residue of her estate to The Northern Trust Company of Chicago, in trust, the income to be used for certain purposes, and the principal to be divided eventually

in equal parts between eight named beneficiaries, if living; if not, to be equally divided among the survivors. Among the beneficiaries named in this provision was "Albert Perry, of Vermont."

May 8, 1929, the trustee, the plaintiff herein, wrote the defendant that under the will of Flora Perry Ullery a certain Albert Perry was then entitled to receive a share of her estate which the trustee was preparing to distribute, and asked him, if he was the person mentioned in such will, to send it an affidavit certifying that fact. On June 5, 1929, the defendant made and mailed to the plaintiff an affidavit wherein he stated that he was the Albert Perry named in the Ullery will and the party entitled to received a share thereunder. Upon receipt of such affidavit, the plaintiff delivered to the defendant securities and cash amounting to $8,607.06, and he gave it his receipt therefor which is plaintiff's "Exhibit 9." At the time the Ullery will was made, the defendant's father, whose name was Albert Perry, was living, and resided at Randolph, Vermont. Sometime after the securities and money had been delivered to the defendant as above stated, the plaintiff notified him that he was not the Albert Perry named in the Ullery will and that he was not entitled to receive anything thereunder, and demanded that he return such securities and money to it, which he refused to do. Whereupon this suit was brought. The defendant had a verdict and judgment below, and the plaintiff brings the case here.

The plaintiff saved numerous exceptions at the trial, only ten of which are now relied upon. These are numbered 1 to 10, inclusive.

■ Numbers 2, 3, 4 and 6 are not considered because inadequately briefed. In effect, they are not briefed at all, since nothing is said respecting them beyond what was said when they were taken. This we have repeatedly held is insufficient. *McAllister* v. *Benjamin*, 96 Vt. 475, 497, 121 Atl. 263; *Raithel* v. *Hall*, 99 Vt. 65, 74, 130 Atl. 749; *Drown* v. *Oderkirk*, 89 Vt. 484, 96 Atl. 11; *State* v. *Corologos*, 101 Vt. 300, 143 Atl. 284, 59 A. L. R. 1541; *Barclay* v. *Wetmore & Morse Granite Co.*, 94 Vt. 227, 234, 110 Atl. 1.

The remaining exceptions are considered in the order in which they are briefed.

I. The plaintiff here notices two exceptions. One is to the exclusion of a copy of a letter which it was claimed was sent by plaintiff to the defendant, marked for identification "Plaintiff's 13," and the other is to the exclusion of a photostatic copy of the plaintiff's trust account, marked for identification "Plaintiff's 13a." All that is said regarding the former is that it was excluded and an exception taken. For reasons already stated, this exception is not considered. The latter is too frivolous to require notice. There was no dispute about the plaintiff's account or the amount that the defendant received. Since this was so, the exclusion of this document, even if admissible, could not possibly have harmed the plaintiff.

V. The defendant testified to a talk that he had with Lomira Perry, another beneficiary under the Ullery will, on the day he received the legacy; whether before or after he received it did not appear. On cross-examination, he testified that he told her that he was the Albert Perry mentioned in the will, and that he had no reason for not telling her that he was getting about $8,000 except that he didn't think it was any of her business. He was then asked: "Q. And you had no particular reason for not telling her that you, Albert G. Perry, was going to get the share of the estate which was willed to Albert Perry, is that right?" This was held inadmissible as matter of law. Whether this was error we need not inquire since, if so, it was manifestly harmless, in the circumstances. Not only had the witness already covered the substance of this inquiry, but he later testified, in effect, to the same thing.

VII. In his argument to the jury defendant's counsel, referring to what was called the distribution sheet, which was marked for identification "Plaintiff's 13b," but was not admitted, said: "He (defendant) never had seen a figure of it. Well, as he says, he had never seen anything about it, then nobody says he had, so the evidence is undisputed." This was excepted to on the ground that this evidence was disputed. The only evidence which it is claimed tends to refute the above statement appears in "Plaintiff's Exhibit 9" wherein the defendant acknowledged that he had examined and approved the trustee's account, and ratified and approved the acts of the trustee in the trust to date. Since the trustee's account and the distribution sheet were different documents, the fact that he had seen the former

did not contradict what counsel said about the defendant not having seen the latter.

■ ■ VIII. It appeared from the evidence of one Bengal, a witness called by the plaintiff, that he was attorney for the plaintiff; that he lived in Chicago, and that he had a talk with the defendant the day the writ in this suit was served, in which he told him that all of the beneficiaries named in the provision of the will in question, except the defendant, were first cousins of the testatrix. It developed on cross-examination that the witness was in error respecting the relationship of several of the beneficiaries to the testatrix. In his argument, counsel for the defendant said, respecting Bengal's testimony: "We know from the evidence here that three of them at least leaving Albert Perry out of it entirely, were not cousins, and we don't know of but one that was, living in Chicago, the common reputation they have." The plaintiff excepted to what was said about the reputation of Chicago, and claimed that much more was said along the same line. If so, the record, which is controlling, does not show it. While it was highly improper, in the circumstances, to refer to that subject, the record does not disclose enough to constitute reversible error.

■ IX. Defendant's counsel in the course of his argument said to the jury: "This man (defendant) is entitled to a verdict at your hands of not guilty; * * * * and this old mother of his that lives with him, and his wife, these children, are entitled to the benefit of what would come to them from his having this money, as provided by Flora Perry Ullery. Here is a man 55 years old, been driving 25 years over the hills getting pretty well along to the time when he can't drive an R. F. D. route any more; that eight or nine thousand dollars would come pretty handy, wouldn't it?"

What was said regarding defendant's age, his inability to drive an R. F. D. route much longer, and the benefit to him of the legacy was excepted to as prejudicial and intended to bias the jury. Counsel again stated that his client was 55 years old, and said that he was simply arguing that in the usual course of events a man of that age could not be expected to drive over the hills as an R. F. D. man. The court then called his attention to the fact that it was claimed that his argument was prejudicial, to which he replied: "He is an R. F. D. man and the money would come in pretty handy and if he is entitled

to it, he ought to have it." This repetition that the money would come in handy was excepted to. The court then addressing counsel said: "That isn't material and possibly it might be prejudicial. That phase of it, his age and the money would come in handy, you needn't consider." Counsel answered: "I believe it is very material; it is proper to consider this woman who made the will had that in mind." Thereupon, the argument was permitted to stand without modification, and the plaintiff was allowed an exception.

The statements excepted to were not justified on the ground finally advanced by counsel because there was no evidence that the testatrix knew when she made her will, or in fact ever knew, the age of the defendant, his occupation, his financial condition, or anything about his family. Nor was such argument justified on any other ground. The only issue was whether the defendant, or his father, was the person intended by the testatrix, and in the absence of evidence that she knew the condition mentioned and consequently might have been induced thereby to make the defendant the object of her bounty, such conditions had no bearing on that issue. That this argument was well calculated to incite the sympathy and prejudice of the jury, and was, in the circumstances, beyond the scope of legitimate advocacy is not open to doubt. *Davis* v. *Randall*, 85 Vt. 70, 81 Atl. 250; *Citizens' Sav. Bank* v. *Fitchbury Mut. Fire Ins. Co.*, 86 Vt. 267, 84 Atl. 970; *Ward* v. *Ward*, 91 Vt. 157, 99 Atl. 635; *Hall* v. *Fletcher*, 100 Vt. 210, 136 Atl. 388.

██ X. At the conclusion of the charge, the plaintiff requested the court to charge that "where the father and son had very similar names, and the son had used and did use the initial letter 'G' to differentiate him as an individual from his father, that that fact was important and to be considered by the jury," and to its failure so to do excepted. The court did not err in ignoring this request, presented at that stage of the trial. *Russ* v. *Good*, 90 Vt. 236, 97 Atl. 987; *Clark* v. *Tudhope*, 89 Vt. 246, 95 Atl. 489; *Johnson & Co.* v. *Central Vermont Ry. Co.*, 84 Vt. 486, 79 Atl. 1095. Moreover, it was too indefinite to require notice. It did not indicate when, where, or how the son used such letter.

*Reversed and remanded.*