MURRAY L. SARGENT *v.* WILLIAM L. ROBERTSON ET UX.

January Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

*Roland E. Stevens* for the defendants.

*Hugh W. Hastings* for the plaintiff.

THOMPSON, J. The defendants are the parents and the plaintiff the husband of Margaret A. Sargent. The plaintiff and his wife were married March 22, 1929, and ceased to live together as husband and wife on October 24, 1930, when she left him. A son was born to them on December 30, 1929. At all times material, the defendants lived in a hotel which they owned and operated in East Thetford, and the plaintiff and his wife, until she left him, lived with his parents on a farm in Thetford about three miles away.

The action is tort for the alienation of the affections of the plaintiff's wife. The defendants' answer is a general denial. There was a trial by jury and a verdict and judgment for the plaintiff. At the close of the evidence the defendants moved for a directed verdict. The motion was overruled and the defendants excepted. The substance of the grounds of the motion is that there is not evidence sufficient to support a verdict for the plaintiff.

The defendants argue that it must be remembered that they are the parents of the plaintiff's wife and that this imposed upon the plaintiff the burden of overcoming the presumption that they acted under the influence of natural affection and for what they believed to be the real good of their daughter. But the case is not one where the evidence tends to show that the separation was brought about by acts of the parents done in good faith and without malice, and the counsel given and the persuasion used by the parents were such as they fairly and honestly considered to be called for by the interests of the child. The defendants and the plaintiff's wife, who was a witness for them, not only denied that they influenced her to leave the plaintiff, but they and she testified that they never talked with her about him.

██ It is also true, as claimed by the defendants, that the plaintiff has the burden of showing that the conduct complained of was actuated by malice; but express malice need not be proved. Malice in the sense used in actions of this kind implies no more than the intentional doing of a wrongful act without just cause or excuse. Direct evidence of the parents' wrongful motives is not required, but malice may be inferred from wrong-

ful and unjustifiable conduct which causes alienation. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 108, 130 Atl. 758.

██ Nor is it necessary that the acts of the parents should be the sole cause of the alienation, because even if the wife had no affection for her husband the defendants had no right to interfere to cut off all chance of its springing up in the future. *Fratini* v. *Caslini*, 66 Vt. 273, 29 Atl. 252, 44 A. S. R. 843; *Lewis* v. *Roby*, 79 Vt. 487, 65 Atl. 524, 118 A. S. R. 984; *Jenness* v. *Simpson*, 84 Vt. 127, 140, 78 Atl. 886; *Woodhouse* v. *Woodhouse*, *supra*, 99 Vt. at page 115, 130 Atl. 758.

It appears from the record that the defendants disliked the plaintiff before he married their daughter and that dislike has continued to the present time. Mr. Robertson ordered him out of their home before the marriage and thereafter the plaintiff was never permitted to enter it. They opposed the marriage, and Mrs. Robertson told her daughter that she could choose between them and the plaintiff, but she would never enter their home again if she married him. She resented their attitude toward the plaintiff and felt bitterly toward them, and after her marriage, until about the first of July, 1930, she never entered their home except on two occasions when she got some of her personal things, nor did she have anything to do with them. Neither of the defendants visited her during that time or had anything to do with her and the plaintiff.

The plaintiff's evidence tended to show that he and his wife lived happily together until sometime in July, 1930, when she began to visit her parents, and thereafter there was a complete change in her attitude toward him and them. She did not seem to be so happy and contented as she had been. She frequently made disagreeable remarks to or about him and acted as though she were trying to start a quarrel. This attitude continued until she left the plaintiff on October 24, 1930, taking the child with her.

Her resentment toward her parents disappeared completely. Sometime in July, 1930, she began visiting their home once or twice a week. The plaintiff, who was then working on the highway, carried her and the child there when he went to work in the afternoon and got her when he returned from his work. On none of these occasions was he invited into, or permitted to enter, the defendants' home. He told her several times that he

thought her parents were trying to get her away from him. She never denied this, but would give an evasive answer. Each time when she returned from visiting her parents she seemed to be in a "brown study." She ate but little food during the two weeks before she left, grew thin, and acted as though there was something on her mind that worried her.

She never told the plaintiff or any member of his family that she was going to leave him, and when she left she and the child were alone at the Sargent home. She engaged a taxi at White River Junction which carried her to the home of a Mrs. Saunders in Enfield, N. H., who was a friend of her and her parents. Her father paid the taxi fare two or three days later. The plaintiff did not know that she had left him until he returned home that afternoon, and he did not learn where she was until he traced her telephone call for the taxi and talked with the driver who carried her to Enfield. He went to Enfield that evening and tried to persuade his wife to go home with him. She would not go, and he was not permitted to see his son until he obtained the assistance of a policeman. The latter asked her why she left the plaintiff, and, after some hesitation, she replied, "Non-support." The plaintiff told her that she could not get a divorce because she had no grounds for one. She replied that she knew that and she did not want a divorce.

Before the plaintiff ascertained where his wife was, he went to the defendants' home and asked Mrs. Robertson if his wife was there. She replied, "Why no, has she gone away?" He then asked her if she knew where his wife was and she replied that she did not. He told her that he was worried as he did not think his wife had enough money to go very far, and Mrs. Robertson replied, "Well I guess you needn't worry. I guess she has plenty." Mrs. Robertson testified that on this occasion she did not know where the plaintiff's wife was; but there was evidence from which the jury could fairly infer that she was not telling the truth, as Mr. Robertson talked over the telephone with plaintiff's wife before she left plaintiff's home, and he then learned that she was leaving and where she was going. The plaintiff's wife left Enfield after staying there a short time. Where she went did not appear in evidence. The plaintiff was not able to locate her, and the defendants refused to tell him where she was. He wrote her several letters but she did not

answer any of them. She and the child returned to her parents' home shortly before Christmas, 1930, and they have lived there since then. At the time this case was tried below there was pending in Orange county court a libel for a divorce and a petition to annul the marriage which she brought against the plaintiff.

The plaintiff's evidence tended to show that he never gave his wife any cause for ceasing to love him nor any grounds for leaving him. Darias Matavia, a witness for the plaintiff, testified that both before and after the plaintiff and his wife were married Mr. Robertson told him that he would try to separate them, or get them apart, if he could.

Rosalind Sargent, plaintiff's sister, testified that she was with plaintiff's wife at the defendants' home in September, 1930; that, as they were leaving, Mrs. Robertson took her daughter a little to one side, put her arm on her shoulder, and said: "My poor little girl, you will come up and see me won't you? You will come up and stay this winter?"

Hilda Estes, a friend of plaintiff's wife, testified, without objection by the defendants, that in August, 1930, the latter told her that her parents did not like the plaintiff, that they wanted to get her away from him, and that her father would pay for a divorce if she would get one, but she did not have any grounds for a divorce.

The plaintiff's wife testified on direct examination that she objected to living with her husband's parents; that they had trouble while living there; that he contributed very little toward her support, and he abused her; that she left him because of his cruel treatment of her and failure to support her. The inference to be drawn from this testimony is that the alleged cruel treatment and failure to support continued all the time they lived together. Her testimony was denied by the plaintiff, and it was contradicted by her on cross-examination, and by other evidence.

The plaintiff worked at a mine in Strafford in the winter and spring of 1930. His wife wrote to him frequently. It appears from her letters, which were received in evidence, that she was deeply in love with her husband, was happy and contented at the home of his parents, but disliked having him away from her, and that she was planning for their future life to-

gether. She testified on cross-examination that everything she wrote in those letters was true and was meant by her; that her relations with her husband's family were satisfactory; that she told Mrs. Sargent that she was the happiest at their home that she had been anywhere, and it was true; that she loved her husband the first of July, 1930, and then her love began to wane; that he was kind to her up to that time, and the first occasion she had to find fault with him was about then; that her mother came to the Sargent home about the first of July and asked her to come down and visit her; that she visited her sister at her parents' home in July and saw her mother; that up to that time her relations with her parents had not been pleasant; that after July her mother occasionally called her over the telephone and asked her to come down. Her testimony of her visits to the defendants' home and of the plaintiff telling her that he thought her parents were trying to get her away from him is substantially the same as that of the plaintiff, to which we have referred.

The substance of the defendants' argument is that their evidence so preponderates that of the plaintiff that there is no evidence left in the case which fairly tends to show that either of them interfered with the plaintiff and his wife. They stress particularly the points that Mr. Robertson denied that he ever offered to pay for a divorce for plaintiff's wife or that he told Matavia after the marriage that he would try to separate the plaintiff and his wife; that their testimony and that of their daughter that they did not alienate her affections is not disputed; that the verdict rests entirely upon circumstantial evidence which is not sufficient to uphold it; and that their impeachment of the plaintiff was of such a character that no other material fact should be found on his testimony alone.

As to the last point, the impeaching evidence does not have the conclusive effect claimed by the defendants. The plaintiff denied on cross-examination that he had been convicted of stealing. A certified copy of the record of his conviction of petit larceny was then received in evidence. The plaintiff explained why he pleaded guilty. Notwithstanding his impeachment upon this point, all of his testimony was to be weighed and considered by the jury in the light of the manner in which it was given and its consistency and inherent probability on the

other points. *Riford* v. *Rochester*, 46 Vt. 738; *Melendy* v. *Bradford*, 56 Vt. 148; *Root* v. *Railway Co.*, 183 Mass. 418, 67 N. E. 365; Jones, Evidence, Civil Cases (3rd ed.), § 903.

 It is sufficient to say, as to the other points of the argument, that the function of this Court on the review of the motion is confined to determining whether there is any evidence tending to support the verdict. We cannot weigh the evidence, and, so far as it is conflicting, we can consider only such as supports the verdict. Where different inferences may reasonably be drawn from the evidence, we are bound to accept the inference most favorable to the plaintiff. *Woodhouse* v. *Woodhouse, supra*, 99 Vt. at page 110, 130 Atl. 758.

██ It is not necessary to undertake a further review of the evidence. We have examined the same and the comments of counsel in respect thereto and are satisfied that the motion for a directed verdict was properly overruled. It is not questioned that the affections of plaintiff's wife in some way became alienated from him, resulting in a loss of consortium. It appears from the evidence, viewed in the light most favorable to the plaintiff, that her affections for him began to wane soon after she and her parents were reconciled, and in a few weeks thereafter there was a complete alienation of her affections. As Mrs. Robertson testified, "she came to accept" the defendants' "viewpoint of her husband."

And in view of other evidence and circumstances in the case, the jury were not bound to accept the testimony of the defendants and their daughter that they never talked with her about the plaintiff and did not alienate her affections.

It is true that much of the plaintiff's evidence is circumstantial, but, as is said in *Nelson* v. *Nelson* (C. C. A.), 296 Fed. 369, 375, quoted with approval in *Woodhouse* v. *Woodhouse, supra*, p. 110: "We must not be unmindful of the facts that human experience of this kind, resulting in a broken home, results from the accumulation of efforts, stealthily carried on. This disintegrating work may be resorted to with many subterfuges. A plaintiff may not produce the strongest kind of evidence to make out a case * * *. The fact that evidence is circumstantial does not impair its usefulness nor deprive it of potency." There was evidence, if believed, from which the jury could find that the alienation of the affections of the plaintiff's wife for him

420

came about through the active interference of the defendants prompted by malice toward the plaintiff.

■ After verdict and before judgment, the defendants moved to set aside the verdict. The only ground of the motion briefed is that the verdict was against the weight of the evidence. This ground of the motion was addressed to the discretion of the trial court, and, as it is not claimed that it failed to exercise or abused it discretion, its action is not reviewable in this Court. *Daniels* v. *Preston,* 102 Vt. 338, 148 Atl. 285.

■ The defendants offered two letters, ''Dfts' E'' and ''Dfts' F'' in evidence. They were excluded and the defendants were allowed an exception. Defendants' E was written and sent by plaintiff's wife to one Nina Fellows. Defendants' F was written and sent by Nina Fellows to the defendants. They were offered for the purpose of showing the state of mind of plaintiff's wife toward him at the time they were written, and on the ground that letters written before the plaintiff brought his action are admissible. Defendants' F was properly excluded as it was clearly hearsay.

■ The rule as to the admissibility of Defendants' E is not so broad as claimed by the defendants. To guard against possible collusion, the law requires that the declarations of the alleged alienated spouse, to be admissible, must have been made before any trouble occasioned by the defendants arose. *Button* v. *Knight,* 95 Vt. 381, 115 Atl. 489; *Rasanen* v. *Viinamaki, alias Hill,* 103 Vt. 323, 154 Atl. 691. The ruling was in plaintiff's favor, and we must construe the record in a way to support it, if it can reasonably be done. The record is silent as to the time when this letter was written, and the evidence is conflicting as to the time when the defendants began interfering with the plaintiff and his wife. We therefore assume, in support of the ruling, that the court found the preliminary fact, as to the time when the letter was written, in the plaintiff's favor. *Button* v. *Knight, supra; Rasanen* v. *Viinamaki, alias Hill, supra.*

*Judgment affirmed.*