## J. A. HEALY, ADMR. *v.* JAMES MOORE.

January Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed October 6, 1936.

326

328

330

*Theriault & Hunt* and *Peter Giuliani* for the plaintiff.

*J. Ward Carver* and *Fred E. Gleason* for the defendant.

Moulton, J. While driving his automobile along the highway in the village of Websterville, on the evening of October 14, 1933, the defendant struck and killed William Donahue and his wife Rose Donahue, who were walking along the road in the same direction as that in which the defendant was proceeding. This action was brought by the administrator of William Donahue, to recover pecuniary damages suffered by the next of kin of his intestate, under the provisions of P. L. 2860. Trial was by jury with verdict and judgment for the plaintiff. The cause comes before us on exceptions by both parties; those of the defendant being to certain rulings upon evidence, to the argument of plaintiff's counsel, to certain instructions to the jury, and to the denial of defendant's motion to set aside the verdict; and those of the plaintiff being to the denial of his motion for a close jail execution.

The negligence alleged was that the lights of the defendant's automobile were tilted down so that the visibility was confined to a distance of 50 feet instead of 150 feet as required by statute; that, in view of this failure of visibility, the defendant was driving at an excessive rate of speed; that he did not keep a proper lookout for pedestrians in the highway; that he failed to sound any signal of his approach to warn the plaintiff's intestate, when he saw or ought to have seen the pedestrians in front of him; that he failed to have his automobile under proper control so that when he saw or ought to have seen the plaintiff's intestate he could have stopped or turned out to avoid striking him, and by failing, when he had reached this point, to operate the car so as to avoid the accident. Our first consideration will be given to the defendant's exceptions.

### Exceptions to Evidence.

The plaintiff's intestate and his wife had been spending the evening at the home of the latter's sister, Catherine Boyce, and the accident took place soon after they had left and while they were on their way to their home situated near by, but on the other side of the road. Miss Boyce was a witness and was asked by plaintiff's counsel whether shortly after the Donahues had left, she heard the sound of an automobile horn, and answered "No." Her answer was taken subject to defendant's exception as being immaterial and incompetent, since she was in

the house at the time and presumably could not have heard the horn if it had been sounded. Whether this was so, within the rule in *Lefebvre's Admr.* v. *C. V. Ry. Co.,* 99 Vt. 366, 380, 133 Atl. 359, we need not inquire, for if there was error it was rendered harmless by the subsequent admission of the defendant, when a witness in his own behalf, that he did not sound his horn. *State* v. *Pierce,* 88 Vt. 277, 278, 92 Atl. 218; *State* v. *Colby,* 98 Vt. 96, 98, 126 Atl. 510.

■ After the accident there were found upon or near the traveled highway one of the shoes worn by Mrs. Donahue, a pipe stem and tobacco can belonging to plaintiff's intestate, an envelope containing photographs, and a cake which he had been carrying home from the Boyce house. The shoe was first found by Motor Vehicle Inspector Fitzsimons, during his examination of the place, about an hour and a quarter after the collision, and its exact location noted by him. Afterwards he threw it to the side of the road where it was subsequently found by another witness. The pipe stem, tobacco tin, cake, and envelope were discovered by other witnesses the next morning. The evidence concerning their location, and the articles (except the cake and the envelope) were admitted as tending to show that the accident occurred at a point at least as far to the west as the places where they were observed to be subject to defendant's exception on the ground that the evidence had no tendency to show just where in fact the contact occurred. But this was not the purpose for which it was received, and notwithstanding the defendant's argument that the articles were light and small and easily moved, that quite a number of people gathered at the place, and that nothing except the shoe was found until the next morning, it cannot be said that the evidence was without some slight probative effect upon the matter covered by the offer, and no reversible error appears. The objection went only to the weight of the evidence.

■■ The witness Kirke testified to the condition of the defendant's automobile after the accident. He said that the right front fender was damaged, the right headlight bent back, and the lens broken, and an iron tube to which the license plate was attached was bent back towards the radiator. On cross-examination by defendant's counsel he was asked whether it took much force to bend the iron tube, and whether much or little pressure was required to bend back the headlight. Each question was ex-

cluded as not being cross-examination, and the defendant excepted. Although the witness was a repair man, and, it may be, might have qualified as an expert, he had not testified as such, but had given evidence only as to his observation of the condition of the car. Under these circumstances the defendant was not entitled as of right to ask questions involving his opinion, and the ruling was without error. *Enos* v. *St. Paul Fire and Marine Ins. Co.*, 4 S. D. 639, 57 N. W. 919, 46 A. S. R. 796, 812. It was within the discretionary control of the court over the cross-examination, and the contrary not appearing, will be taken to have been made in the exercise of such discretion. *State* v. *Long*, 95 Vt. 485, 491, 115 At. 734. Abuse thereof does not appear.

■ An emblem which had been attached to defendant's car was found in two parts in the roadway. One part was near the automobile, the other further back. They were offered as tending to show the force of the collision and that the accident happened as far back as the location of the rearmost part, and received subject to defendant's exceptions. That, from the composition of the emblem, the jury could have formed some opinion of the blow by which it was broken from the car in pieces is sufficiently apparent. And so far as the second offer is concerned, the question is covered by what we have said concerning the other articles found in the vicinity. No error is made to appear.

■ A coat which appears to have been torn and which had been worn by Mrs. Donahue at the time of the accident was introduced as an exhibit, subject to defendant's exception. It was offered to show the force of the collision. The objection was that it had no such tendency. The defendant argues that while the witness who identified it (Mrs. Donahue's daughter) testified that it was in the same condition as it was after the accident, it was not shown that its then condition differed from what it was before the accident. But this point was not called to the attention of the trial court, and is unavailing here.

On cross-examination of the defendant the following occurred:

"Q. Now you say that when you saw this movement
by these two people, whatever it was, you
slapped on your brakes hard? Ans. I did.

"Q. And you tell the jury, therefore, do you, that you put on your brakes before your car hit these people? Ans. Well, perhaps slightly, but not much, they were in the road, they made a motion to come into the road, sign to come into the road and I immediately slapped the brakes on."

On motion by plaintiff's counsel the latter answer following the words, "they were in the road" was stricken from the record, and defendant excepted. No grounds for the exception were stated, but it must have been clear to the court that the only reason could have been that the answer was responsive. We think that the answer should have been allowed to stand. The witness had previously, on both direct and cross-examination, testified that, when he saw the Donahues move into the roadway, he applied his brakes with force. What he said regarding a slight application plainly referred to his action when he approached the two persons but before they stepped into the road; and he reiterated that, as he said, he "slapped on the brakes" as soon as he saw them change their position. By striking out the latter part of the answer, the record was left so that the jury might conclude that his previous testimony was modified, and instead of a forceful application of the brakes, there was only a slight one. Taken as a whole, the answer was responsive and should have been allowed to stand, but it does not follow that the error is such as to cause a reversal, because there was an ample apportunity for the defendant, on redirect examination, fully to explain his conduct, and so it cannot be said that he was prejudiced by the ruling.

### EXCEPTION TO ARGUMENT.

During a view of the scene of the accident, taken by consent of both parties, the defendant's counsel called the jury's attention to a tree from which a limb had been broken off. No evidence was introduced with regard to it, but in his argument the plaintiff's counsel said:

"Have you heard a word about that tree with the limb broken off? No, because it has turned

out, gentlemen of the jury, that there was perfect visibility down there.''

On objection and exception to this argument the court ruled that it was improper. Counsel for the plaintiff withdrew it. Although there was no specific instruction to disregard it, it seems clear that there could have been no misapprehension on the part of the jury with regard to their duty concerning the incident and assuming the impropriety, prejudice is not made to appear. *Russ* v. *Good*, 92 Vt. 202, 207, 102 Atl. 481.

## EXCEPTIONS TO CHARGE.

In the course of the charge the court said:

"Now on the question of the warning, there is no statute law, precise statute law, which requires a warning to be given when approaching a pedestrian. Our law leaves it simply to the jury to say whether or not under the circumstances that existed there, it would have been or would not have been the prudent and careful thing to do, to have blown some sort of a signal. That depends, of course, upon all of the circumstances that surrounded there, the degree of visibility both that the defendant had and also what these other parties would have had * * * and it is for you to say, considering the fact that these people were walking along there, and what the evidence shows, as you believe the fact to be, whether they did in fact see or know of the approach of the car, whether it was or was not the act of a careful and prudent man to approach them without giving a warning. It is simply for you to say on the evidence.''

An exception was taken by the defendant on the ground that ''there was no obligation in law to sound a signal, as is required when passing another vehicle.''

■■ It is true that there is no specific statutory requirement to this effect as there is when a driver is going around a curve, approaching the brow of a hill or a highway intersection,

or overtaking another vehicle (P. L. 5110, XV) but P. L. 5149 forbids the operation of an automobile ''in a careless or negligent manner, * * *'' or ''in a manner to endanger or jeopardize the safety, life or property of a person,'' and this is merely declaratory of the common law. If, in the exercise of ordinary prudence, a signal to pedestrians is necessary to warn them of the approaching automobile, there is an obligation to give it. *Heuvel* v. *Schultz*, 182 Wis. 612, 197 N. W. 186, 187; *Olsen* v. *Peerless Laundry*, 111 Wash. 660, 191 Pac. 756, 758; *Parr* v. *Peters*, 159 Md. 106, 150 Atl. 34, 37; *Hamel* v. *Peabody*, 78 N. H. 585, 97 Atl. 220, 221; *Howell* v. *Nance*, 28 Ga. App. 575, 112 S. E. 294; *Gretton* v. *Duncan*, 238 Ky. 554, 38 S. W, (2d), 448, 450, and see *Porter* v. *Fleming*, 104 Vt. 76, 80, 156 Atl. 903, and cases cited. The ground of the exception is unavailing.

 In his brief the defendant contends that there was no evidence to warrant the instruction, but since this point was not made below, it is not for consideration here. *Townshend* v. *Townshend*, 84 Vt. 315, 318, 79 Atl. 388; *Royal Bank* v. *Girard*, 100 Vt. 117, 119, 120, 135 Atl. 497.

 The next exception is to an instruction that if the Donahues were in the road at the point of collision while in the exercise of due care upon their part, and suddenly saw the defendant's car bearing down upon them, and the situation was such as would naturally overpower the judgment of a prudent person, so that they were momentarily incapable of intelligent action, they would not be negligent for failing to adopt a course which on reflection would appear to be a better one. The grounds of objection are that the defendant was not responsible for their doing what they did, and that the undisputed evidence showed that if they had not been in a place in the road where they should not have been, there would not have been an accident. The evidence tended to show that when the defendant first observed the Donahues, they were walking along the road ahead of him on the right-hand side next the grass. There was no sidewalk, so they were properly there, although if they had not been, it would not have relieved the defendant of the duty of due care. *Dervin* v. *Frenier*, 91 Vt. 398, 400, 100 Atl. 760. His testimony as to the distance at which he first saw them was conflicting. In answer to various questions he said that it was when he crossed a railroad crossing some 500 feet away; when he was 75 feet easterly of the crossing; when he was 150 to 175

feet way from them; and when he changed his course to the left, which he testified was 30 to 40 feet behind them. Other witnesses testified that he told them that it was when the car was 50 feet from them, and another that he said that ''he didn't see them until he got within 10 feet of them.'' Yet he also testified that his range of vision with the aid of the street lights was 300, and perhaps 400, feet. He said that he turned out slightly to the left, in order to pass the Donahues and that when he was 10 or 15 feet behind them they ''jostled'' or ''shuffled'' into the roadway in front of his car, and were struck, and if they had not done so he would have passed them without injury and that he applied his brakes hard when 6 or 7 feet from them.

Under these circumstances it was permissible for the jury to infer that in the absence of a signal, with the lights of the car tilted down so that the illumination was only 50 feet and with the evidence as to the damage to the car and the nature of the injuries to the Donahues, who suffered fractured skulls, cuts, contusions, and broken limbs, and were carried some distance on the car, and then projected 5 to 7 feet ahead upon the road, all of which tended to show the force of the collision and consequently the speed of the car (*Bruce* v. *Bitgood*, 113 Conn. 783, 156 Atl. 859, 860; *Gaskill* v. *Amadon*, 179 Wash. 375, 38 Pac. (2d), 229, 231; and see *Duprat* v. *Chesmore*, 94 Vt. 218, 222, 110 Atl. 305), the Donahues were not negligent in failing to detect the approach of the automobile until it was very near them, and in attempting to escape the sudden danger so brought about they had no time for reflection, and were within the rule that a prudent person may in such a situation fail to use his best judgment, omit some precaution, or may not use the best available method of meeting the danger and still not be negligent. *Hatch* v. *Daniels*, 96 Vt. 89, 94, 117 Atl. 105; *Landry* v. *Hubert*, 100 Vt. 268, 281, 137 Atl. 97; *Lee* v. *Donnelly*, 95 Vt. 121, 127, 113 Atl. 542; *Porter* v. *Fleming*, 104 Vt. 76, 81, 156 Atl. 903.

An instruction which applied the sudden emergency doctrine to the conduct of the defendant was also the subject of an exception upon the ground that the undisputed evidence of the tracks of the automobile showed that the defendant was driving to the left of the Donahues to avoid them, and would have done so if they had remained where they were. If the defendant was negligent in approaching the pedestrians from be-

hind without warning, the situation in which he found himself was caused by his own lack of care and the doctrine cannot be invoked in his favor. *Landry* v. *Hubert, supra.* On the other hand if, as he claimed, he was driving carefully, so as to pass them, and they negligently stepped in front of him when he was only ten or fifeen feet away, so that he had no chance to exercise a judgment as to his course of action, the doctrine was inapplicable to the situation. In either event, therefore, the instruction was erroneous, but, if anything, it was favorable to the defendant, and no prejudice is affirmatively shown. *Summerskill* v. *Vermont Power and Mfg. Co.,* 91 Vt. 251, 260, 99 Atl. 1017; *Goslant* v. *Town of Calais,* 90 Vt. 114, 123, 96 Atl. 751; *Niles* v. *C. V. Ry. Co.,* 87 Vt. 356, 366, 89 Atl. 629.

The defendant excepted "to the submission of the question where the Donahues were walking, whether they were walking on the right side of the road until they turned toward the middle because there is no issue on that; there is no dispute." The portions of the charge to which we are referred do not support this objection. In one place, in explaining the sudden emergency rule, the court said "if they were in the road at that point and got there without any fault, that is, by exercising the care and prudence of a prudent person, and suddenly saw this car bearing down on them, and if that situation * * * was a situation which would naturally overpower the judgment of an ordinarily prudent person, so that momentarily they were incapable of intelligent action, they would not be negligent for failing to adopt a course which on reflection would appear to be a better one." It is obvious from the context that the point referred to was not the side of the road but the place where they were struck, and the word "if" referred to the question whether they were there without negligence. In another connection occurred this language: "If you should find that they were walking upon the right-hand side of the road and out of a place of danger * * * and you should find that they took no steps to turn around and see if other cars were coming * * *." Here the charge concerned their claimed contributory negligence in failing to observe the defendant's automobile and leaving a place of safety. Again, in an instruction regarding the defendant's negligence, it was said, "Considering the fact that these people were walking along there," the jury should judge upon what the evidence showed, and upon what they believed the fact to

be whether they saw or knew of the approach of the car. In none of these instances was it possible for the jury to understand that the place where the Donahues were walking before they moved into the road, in the path of the car, was an issue in the case. All the evidence tended to show that they were on the side of the road until just before the accident. Since the court did not tell the jury, in fact or in effect, what the objection indicates, the exception cannot be sustained. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 147, 130 Atl. 738.

Another instruction was to the effect that as long as the Donahues were apparently walking along the side of the road, the defendant had a right to assume that they would not carelessly go or be jostled out into the road, but if there came a time when he saw from something they did or the way they acted that they did not see him, or know he was there, or were careless, then and from then his conduct must be judged in the light of what he saw. An exception was taken to this on the ground that there was no evidence to show that he had any opportunity to avoid the accident after he saw that they were careless. But, as the plaintiff's brief points out, the charge was not confined to carelessness in stepping out into the road in front of the car, but also to the claimed negligence in failing to discover the car before leaving a place of safety. If the defendant, as he approached, became aware or ought, in the exercise of ordinary prudence, to have become aware that the Donahues were oblivious of his presence, it was a question for the jury whether he ought to have anticipated the possibility of some act on their part which would have brought them into the path of the automobile, and taken steps, by a warning or otherwise, to forestall an accident. *Dervin* v. *Frenier,* 91 Vt. 398, 400, 100 Atl. 760. The exception is not sustained.

Another portion of the charge was as follows: ''Even if you should find that the plaintiff's intestate did not look toward the west as they crossed the street, such failure would in no sense be the proximate cause in whole or in part of the accident, if the defendant's car was not where they could have seen it had they looked * * * provided you find that the car was far enough away so that if they had looked they couldn't have seen it.'' An exception was taken on the ground that on all the evidence the car must have been visible to them as they moved across the road.

The Boyce house is situated upon the northerly side of the road, and the house of the Donahues was upon the southerly side. When the two left to go home, Miss Boyce accompanied them to the front door, and watched them as they went down the path, until they reached the mail box, which according to the scale plan introduced in evidence, was about 30 feet from the porch, and 6 or 7 feet from the traveled portion of the highway. As Miss Boyce stood in the door she looked up and down the road and saw no lights coming in either direction. The Donahues crossed the road and turned to their left, proceeding eastward on the southerly side of the road to their house, which was approximately 115 feet away from a point directly opposite the Boyce front walk.

The defendant argues that at 20 miles an hour it would require a car about 21 seconds to travel the entire distance, from the railroad crossing to the Donahue house, and walking leisurely, it would take 23 seconds for two persons to go from the Boyce house to a point in front of the Donahue house; hence that the Donahues must have seen the automobile if they had looked. But there was, as we have seen, evidence from which the jury could infer that the speed exceeded 20 miles an hour—the injuries to the car, the fact that the Donahues were carried along on the front of the car and, when it had stopped, were thrown on the road several feet in front of it, the nature of their injuries and the articles scattered in the road. The time consumed by the Donahues which is material is not that which would elapse before they reached their home, but the time it would take for them to cross the road, which was approximately 22 feet wide, for it was what they could have seen as they did this that was the subject of the instruction. Indeed the defendant testified that he first saw them when he had arrived at a point 75 feet east of the railroad crossing, and they were then walking along the southerly side of the road, and 60 or 70 feet easterly of the Boyce front walk. In view of the foregoing matters and the testimony of Miss Boyce as to the absence of any car in the highway at practically the moment in which they made the crossing, it cannot be said that there was no issue for the jury here.

██ ██ The defendant took two exceptions to the following instructions: ''The defendant was driving a machine which, on account of its speed, weight, and quietness, was capable of doing

great damage, and the law puts upon one so situated a greater and more constant caution. The defendant was bound to exercise care commensurate with the dangers arising from a lack of it.'' The grounds of the first exception were that there was no evidence whether or not the defendant's car was quiet and that the presumption was that an 8 cylinder Cadillac does not move without sound. The charge was in the language of *Aiken* v. *Metcalf*, 90 Vt. 196, 198, 97 Atl. 669. It was given for the purpose of defining the degree of care required of the defendant in the circumstances. Whatever the amount of the noise that attended the operation of the particular automobile, the matter is of too trifling a nature to become reversible error. See *Laferriere* v. *Gray*, 104 Vt. 366, 371, 160 Atl. 669. The other exception challenged the concluding sentence in the excerpt above quoted, because the court did not give a like instruction with regard to the Donahues. But at this point the court was speaking of the duty of the defendant, and elsewhere there was given an adequate explanation of the obligation of the plaintiff's intestate to exercise due care. No error appears.

Another exception was taken to an instruction, in substance, that if the jury should find that the headlights on the defendant's car did not comply with the statute in that they did not illumine the road so as to render visible a substantial object on the ground, at least 150 feet ahead while the car was in motion, he would not be justified in assuming that the road was open and unobstructed in the space between the limit of visibility, and a point 150 feet in front of the automobile. The objection stated was that the evidence showed that the road was at all times open to the public travel up to 'the time the Donahues turned in front of the car. That this instruction was more helpful than confusing to the jury may well be doubted, but what it amounted to was that if the defendant's lights were not of the legal standard, he was not entitled to assume that no person was in the road beyond his vision, and less than 150 feet away, and it was given in connection with and as qualifying a statement of the general rule requiring the operation of an automobile along the highway in the dark to be at such a speed that it can be stopped or turned aside within the distance that objects can be seen ahead of it, as stated in *Steele* v. *Fuller*, 104 Vt. 303, 312, 158 Atl. 666; *Palmer* v. *Marceille*, 106 Vt. 500, 508, 175 Atl. 31.

 In his brief the defendant argues that this rule is not a hard and fast one to be applied under all circumstances, *Chaffee* v. *Duclos*, 105 Vt. 384, 386, 166 Atl. 2, and that an unrestricted application of it would impose an exercise of extraordinary care instead of ordinary care, citing *Kaufman* v. *Hegeman Transfer, etc., Co.*, 100 Conn. 114, 123 Atl. 16, 17. But we need not consider this contention, or examine the Connecticut case to see whether it is consistent with our decisions on the subject, for the objection was not stated to the trial court, and consequently is unavailing here. *Higgins* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394; *Townshend* v. *Townshend*, 84 Vt. 315, 318, 79 Atl. 388. As to the ground relied upon below, all that is said is that the instruction was error because it required a finding by the jury for which there was no basis in the evidence. This, being no more than was said when the exception was taken, is inadequate briefing. *Northern Trust Co.* v. *Perry*, 104 Vt. 44, 46, 156 Atl. 906.

 An exception was taken to an instruction to the effect that while no statutory provision requires a warning to be given when approaching a pedestrian, the law leaves it to the jury to say whether, under the circumstances, it would have been the careful and prudent thing to do, and the propriety of any rate of speed depends, among other things, upon the warning given of the approach of the vehicle. The reason for the objection was that a failure to sound a horn was not necessarily mitted the question whether, under the circumstances, the exer- negligence. But the instruction was not to this effect. It sub- cise of due care would have required the warning. The exception is, therefore, unavailing. And so, also, is the exception to the failure to charge that if the Donahues were walking along the side of the highway, doing nothing to indicate that they were not going to continue to do so, it was not the duty of the defendant, after turning to the left to avoid them, to sound a signal or horn. According to a plan introduced in evidence, he turned to the left at a point 77.8 feet from the place where Mrs. Donahue's shoe was found. It could not be ruled as a matter of law that he was thereafter absolved from the duty to give warning, since the evidence tended to show that the Donahues were apparently oblivious of his approach, and therefore a deviation from their line of travel might have been anticipated. This was a question for the jury. We refer to our previous discus-

sion of the first exception to the charge as bearing upon what we have just said regarding these two exceptions. An exception was taken in the following language: "We except to what the court said about the circumstance showing negligence or the results showing negligence, as claimed by the plaintiff, because we say that it is in substance the doctrine of *res ipsa loquitur*, which is not applicable to the circumstances of this case." The part of the charge which is claimed to be covered by this exception is that wherein the court said that the plaintiff claimed that it was shown, from the condition and position in the road of the automobile after it had stopped with relation to the tracks in the road and to the objects picked up in the road, that the defendant was going too fast, was not keeping a proper lookout, and his lights contributed to a part of the cause of the accident, "in other words, they say that the circumstances as shown and which I have already detailed impel you to the conclusion that he did fail to exercise the care of a prudent man * * * they claim from the evidence and from these circumstances that they have shown these two intestates themselves did not exercise any carelessness which caused, or formed a part of the cause of the accident." It is extremely doubtful that this exception was sufficiently explicit to call the court's attention to this particular instruction, since at various times the court charged concerning the circumstances and the permissible inferences arising from them. *Garfield* v. *Passumpsic Telephone Co.*, 91 Vt. 315, 326, 100 Atl. 762; *Dodge Brothers* v. *Central Vermont Ry. Co.*, 92 Vt. 454, 459, 104 Atl. 873. However, the instruction does not deserve the criticism. Whether or not the maxim was applicable, or more accurately, availed the plaintiff (*Humphrey* v. *Twin State Gas and Elec. Co.*, 100 Vt. 414, 424, 139 Atl. 440, 56 A. L. R. 1011) is neither here nor there. Earlier in the trial the plaintiff disclaimed all right to its benefit; and what the court said at this point was merely a statement of the claims as then made by him, and not the submission of any question to the jury, and could not reasonably have been so understood. The instruction was not in fact or in effect what it was claimed to be, and the exception is not sustained. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 143, 130 Atl. 758. Negligence and contributory negligence, or its absence, and proximate cause, may be shown by circumstantial evidence, if sufficient to justify the inference. *Lazelle* v. *Newfane*, 69 Vt. 306, 307, 37 Atl. 1045;

346

*Cummings* v. *Cambridge*, 93 Vt. 349, 351, 107 Atl. 114; *Hatch* v. *Daniels*, 96 Vt. 89, 92, 117 Atl. 105; *Wellman, Admr.* v. *Wales*, 97 Vt. 245, 253, 122 Atl. 659. But the argument in the defendant's brief to the effect that the circumstances mentioned did not justify the inference of negligence in this instance, not having been made below, does not require attention here. *McAllister* v. *Benjamin*, 96 Vt. 475, 490, 121 Atl. 263.

An exception was taken "to the submission of the question as to the negligence of the plaintiff's intestate in the way and manner in which they traveled just preceding the accident, because we say that there is no evidence as a matter of law which would warrant a finding that they were free from negligence at the time." It is argued that the only testimony as to the conduct of the Donahues immediately before the accident is that of the defendant, and expressly negatives their freedom from negligence. The defendant, it is true, was the only eye witness of the occurrence. He testified that when he first saw the Donahues in front of him they were walking along near the grass on the side of the road, in the same direction as that in which he was proceeding, Mrs. Donahue toward the side of the road, and Mr. Donahue toward the middle, with his arm around his wife. They went on in this position until the defendant, who when he was 30 or 40 feet away had turned out to the left so that he would pass them at a distance of 6 or 7 feet, was 10 or 15 feet from them. At that time, as the defendant variously put it, they seemed to be "in a jostling mood, as it was fooling"; "a scuffle or something of that kind," "a jostling or scuffling something like that," and came out into the road in the path of the automobile, Mr. Donahue's arm being still around Mrs. Donahue. The defendant testified that he was driving at a rate of 20 miles an hour, but as we have seen, it was possible to infer that the speed was greater. The evidence of the conduct of the Donahues up to the time they came out into the road had a tendency to show that they were then in the exercise of due care. See *Peterson* v. *Meehan*, 116 Conn. 150, 163 Atl. 757, 758. The testimony as to their sudden deviation from the course, taken in connection with what the jury would be entitled to find as to the speed, condition of lights, and failure to sound a signal, was open to the inference that having been unaware of the approach of the automobile, and being startled and confused by emergency caused by its sudden and unannounced proximity, they were try-

ing to escape from what appeared to be a dangerous situation as well as to the inference that they were heedless of their surroundings. The defendant's characterization of their action as being "something like fooling," "jostling," or "scuffling" is not controlling. Since there were opposing inferences which were reasonably possible, the question of contributory negligence was for the jury. *Anderson* v. *Dutton,* 100 Vt. 464, 468, 139 Atl. 210; *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42, 57, 109 Atl. 22. The exception is not sustained.

 The last exception to the charge was taken after a supplemental instruction had been given. It was as follows: "The defendant excepts to the instruction in the supplemental instruction relative to the rights of the parties had to assume that the other would use due care, wherein the court said that a party in order to have the benefit of that assumption, must himself be free from negligence, because we feel that this is not the basis of the rule with relation to the assumption that they had a right to indulge." Regarding this objection it is enough to say that it was not sufficiently explicit to apprise the court of the real point of it. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 148, 138 Atl. 758; *Cummings* v. *Conn. Gen. Ins. Co.,* 101 Vt. 73, 82, 142 Atl. 82; *Moore* v. *Duke,* 84 Vt. 401, 407, 80 Atl. 194; *Kiley* v. *Rutland R. R. Co.,* 80 Vt. 536, 550, 68 Atl. 713, 13 Ann. Cas. 269. Therefore we give it no further attention.

## Motion to Set Aside Verdict.

This motion was based upon five grounds:

(1) That the verdict was contrary to the reasonable inferences from all the evidence, since such inferences showed that the death of plaintiff's intestate was not due to negligence of the defendant as a proximate result thereof.

(2) That the verdict was contrary to the evidence and not warranted thereby, or by any reasonable inferences to be drawn therefrom.

(3) That from the evidence, and reasonable inferences to be drawn therefrom, there was nothing upon which the minds of reasonable men could differ and that the defendant was entitled to a verdict.

(4) That the verdict was excessive and not warranted by the evidence, as to damages.

(5) That the verdict was palpably arrived at by averaging the opinions of the jury, and is nothing more than a wagering verdict.

Grounds 4 and 5 are not briefed, and therefore not considered. Grounds 1 and 2 are admitted by the defendant to have been directed to the discretion of the trial court and to be revisable only when an abuse of discretion is made to appear. *Butler* v. *Favreau,* 105 Vt. 382, 383, 166 Atl. 1; *Sargent* v. *Robertson,* 104 Vt. 412, 420, 160 Atl. 182; *French* v. *Wheldon,* 91 Vt. 64, 68, 99 Atl. 232. The third ground is, in effect, that the verdict was wholly without evidentiary support, and here the rule as to discretion does not apply and the ruling is revisable. *Paska* v. *Saunders,* 103 Vt. 204, 217, 153 Atl. 451; *Wellman, Admr.* v. *Wales,* 97 Vt. 245, 248, 122 Atl. 659; *Whitman* v. *Dailey,* 95 Vt. 454, 456, 115 Atl. 559. In this instance the evidence must be taken in the most favorable light, for the prevailing party, and the effect of modifying evidence is to be excluded. *Twin State Fruit Corp.* v. *Kansas,* 104 Vt. 154, 157, 157 Atl. 831.

Without making an extended review of the testimony, it is clear from what we have already said in dealing with the various exceptions taken during the trial that there was evidence from which the jury could reasonably find that the defendant was guilty of negligence which was the proximate cause of the accident, and that the plaintiff's intestate was not contributorily negligent. Therefore the third ground is unavailing. Neither does it appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis upon which it can stand, hence we are not justified in sustaining the exception to the motion on the first and second grounds. *Catto* v. *Liberty Granite Co.,* 101 Vt. 143, 146, 147, 141 Atl. 684. It was the province of the jury to construe the evidence and determine its weight, and doubt in this regard is always to be resolved in favor of the verdict. *Smith* v. *Martin,* 93 Vt. 111, 122, 106 Atl. 666. It does not appear that the discretion of the court was exercised on grounds, or for reasons, clearly untenable, or to an extent wholly unreasonable, which is our recognized test. *Temple* v. *Atwood,* 99 Vt. 434, 435, 134 Atl. 591.

We have considered all exceptions briefed by the defendant, and find no reversible error.

## MOTION FOR CLOSE JAIL CERTIFICATE.

After verdict and before judgment thereon the plaintiff moved for a certified execution. After a hearing at which the evidence taken upon trial was submitted, the motion was denied, and the plaintiff excepted upon three grounds: (1) That the court had declined to view the evidence in the light most favorable to the plaintiff and to treat as established all facts favorable to the plaintiff implicit in the verdict; (2) that the denial of the motion was without any support in the evidence; (3) that the denial of the motion was an abuse of the court's discretion. At the hearing the plaintiff offered evidence tending to show that the defendant was without means to meet the judgment obtained against him, and excepted to its exclusion.

P. L. 2195 which provides for the issuance of such an execution is as follows: "A person shall not be admitted to the liberties of the jail yard, who is committed on execution in an action founded upon a tort, when the court, at the time of such judgment, adjudges that the cause of action arose from the wilful and malicious act or neglect of the defendant, and that the defendant ought to be confined in close jail, and a certificate thereof is stated in or upon such execution."

The first ground of the motion does not appear to be briefed, except as it is implied in the argument concerning the other grounds and so does not require separate treatment.

The awarding of the certificate is so far a question of fact and matter of discretion of the trial court that it is not revisable if there is any supporting evidence, although when the facts are spread upon the record by findings made by the trial court, it is a question of law whether such facts entitled the plaintiff to the certificate and the decision of the trial court is revisable here. *Jewett* v. *Pudlo*, 106 Vt. 249, 254, 255, 172 Atl. 423. But that there need not be a written finding of facts made and filed by the trial court is apparent from *Wellman, Admr.* v. *Mead*, 93 Vt. 322, 338, 107 Atl. 396, 403ff., wherein the presiding judge certified that the adjudication of a wilful and malicious act or neglect was based wholly upon the evidence before

the jury, and, the transcript being referred to and made controlling by the bill of exceptions, the evidence was examined in this Court to determine whether the granting of the motion was justified. See also *Whiting* v. *Dow,* 42 Vt. 262, 264, where the same situation seems to have arisen, and *Robinson* v. *Wilson,* 22 Vt. 35, 37, 52 A. D. 77, where it is said that the court have the right to determine the fact on what has appeared on trial and that where there has been a full trial, it would be absurd to hold that the court is bound to hear the case over again. In the instant case it appears by the bill of exceptions that the motion was heard on the evidence presented on the trial and the transcript is made a part of the bill and is to control; hence, we may consider the question whether that evidence so clearly showed that the defendant was guilty of a wilful and malicious act or neglect that the denial of the motion was, as a matter of law, unjustified. It is incumbent upon the plaintiff, as the moving party, to cause the facts which are necessary to his success affirmatively to appear, *North Adams Beef & Produce Co.* v. *Cantor,* 103 Vt. 514, 518, 156 Atl. 879, and it is the duty of the court to grant the certificate if the plaintiff is entitled to it as a legal right, there being, in this situation, no discretion in the matter. *Styles* v. *Shanks,* 46 Vt. 612, 616.

██ ██ It is necessary, however, to emphasize a distinction. The statute contemplates a separate and independent examination of the evidence by the court as a basis for the adjudication. *Jewett* v. *Pudlo, supra,* at page 254. The jury are not required to find, in such a case as this, the elements of wilfulness and malice. Their duty is to find, as they have found here, what in fact the defendant's conduct was, and whether it was negligent and the proximate cause of the accident. The nature of his conduct is for the court, and in determining this point there is no obligation to view the evidence in the light most favorable to the plaintiff. No legal inference as to the character of his act or neglect is to be drawn from the verdict. *Robinson* v. *Wilson,* 22 Vt. 35, 37, 52 A. D. 77. All that was settled by that was the right of the plaintiff to recover. *Whiting* v. *Dow,* 42 Vt. 262, 264.

██ ██ The term "wilful and malicious act or neglect" as used in the statute signifies a wrongful act done intentionally without just cause or excuse, and the malice contemplated is involved in the intentional doing of a wrongful act in disregard of

what one knows to be his duty to the injury of another. *Jewett v. Pudlo, supra,* at page 255; *North Adams Beef & Produce Co. v. Cantor, supra.* An omission, or neglect, may be wilful and malicious, equally with an affirmative act, and if it exists, will warrant the granting of the certificate. *Mullin* v. *Flanders,* 73 Vt. 95, 100, 50 Atl. 813; *Hill* v. *Cox,* 54 Vt. 627, 628. The fact that the defendant did not intend the injurious result which flowed from his intentional act or omission does not make the case one in which the certificate cannot be granted. *Mullin* v. *Flanders, supra; Judd* v. *Ballard,* 66 Vt. 668, 674, 675, 30 Atl. 96.

In the instant case it is enough to say that the failure to sound a warning, which was undisputed, was an intentional omission and therefore a wilful and malicious neglect within the meaning of the statute. The verdict has established it as negligent and a cause of the accident. The plaintiff is entitled to the certificate, and since final judgment is to be entered here, it may be granted at this time. See *North Adams Beef & Produce Co.* v. *Cantor, supra.* It is unnecessary to consider the other questions raised by the plaintiff's exceptions.

*Judgment affirmed, and judgment that the cause of action arose from the wilful and malicious act or neglect of the defendant, and that he ought to be confined in close jail. Let a certified execution issue.*