JOSEPH D'AMICO, plaintiff in error, vs. STATE, defendant in error.

1.   CRIMINAL LAW—QUESTIONS FOR JURY.

The jury are the judges of the credibility of witnesses and of the weight and value of their testimony.

2.   CRIMINAL LAW—QUESTIONS FOR JURY.

When there is any evidence upon which a verdict of guilty could be reasonably based, the court will not take the case from the jury, nor set aside the verdict.

3.   INTOXICATING LIQUORS—UNLAWFUL SALE—EVIDENCE—SUFFICIENCY.

Evidence *held* to support conviction for unlawful sale of intoxicating liquors.

4.   INTOXICATING LIQUORS—UNLAWFUL SALE—WHAT CONSTITUTES.

Where a witness went to defendant, and paid cash for a barrel of wine, which was delivered to the witness' place of business on the same day, the transaction was a sale, and not a contract for the sale, of the liquor.

5.   INTOXICATING LIQUORS—MUNICIPAL COURT—JURISDICTION—CRIMINAL PROSECUTIONS.

Under 16 *Del. Laws*, c. 384, § 12, providing punishment for violation of acts regulating sale of intoxicating liquors, the municipal court has no juris-

diction of a prosecution of a licensee for the sale of liquors, or alleged illegal sale thereof in excessive quantities; but the Court of General Sessions was the only court having jurisdiction.

6. WITNESSES—PRIVILEGE—TREASURY OFFICIALS.

The rule of the United States Treasury Department that collectors of internal revenue will decline to testify to facts coming to their knowledge in their official capacity is not available on behalf of a defendant, against whom a deputy collector did testify; the collector himself being the only one entitled to claim the privilege.

7. CRIMINAL LAW—EVIDENCE—SELF-SERVING DECLARATIONS.

In prosecution for illegal sale of intoxicating liquors, letters of defendant to deputy revenue collector, denying that he had sold the liquors, were inadmissible, as self-serving.

8. CRIMINAL LAW—APPEAL—HARMLESS ERROR.

Error, if any, in refusing to allow one accused of illegal sale of a barrel of wine to testify as to letters he had written denying the sale, was harmless, where in his testimony he had already denied the sale.

9. INTOXICATING LIQUORS—ILLEGAL SALE—EVIDENCE—ADMISSIBILITY.

In prosecution for illegal sale of intoxicating liquors in the barrel, it was permissible for a witness to say that shortly before the sale there was no barrel of liquor at the place at which defendant delivered it, as preliminary to showing that after the alleged sale there was a barrel at such place.

*(October 23, 1917.)*

PENNEWILL, C. J., and BOYCE, CONRAD and RICE, Associate Judges, sitting.

*Leonard E. Wales* and *Philip L. Garrett* for plaintiff in error.

*David J. Reinhardt,* Attorney General, and *P. Warren Green,* Deputy Attorney General, for the state.

Supreme Court, January Term, 1917.

ERROR to the Court of General Sessions for New Castle County, No. 1, January Term, 1917.

Joseph D'Amico was placed on trial in the court below, Heisel, J., sitting, under indictment No. 40, January term, 1916, for unlawfully selling intoxicating liquors. Verdict, guilty. Accused brings error. Affirmed.

At the time of the commission of the offense charged in the indictment, the defendant held a liquor merchant's license, under which he was authorized to sell, to be drunk off the premises, malt or brewed liquors in quantities not less than three quarts, or more than one barrel, and other intoxicating liquors in quantities not less than three quarts, nor more than five gallons. The defend-

ant was indicted for unlawfully·selling to one Joseph Le Fieri, in Brandywine Hundred, New Castle County, intoxicating liquor, to wit, wine, gin, and whisky, in a quantity greater than five gallons. The evidence produced by the state at the trial related exclusively to a barrel of wine alleged to have been sold on the tenth day of March, 1915, to Joseph Paqua, for Joseph Le Fieri, the said Paqua being a son-in-law of Le Fieri and manager of his commissary, at Bellevue Quarries in Brandywine Hundred.

Paqua testified that he bought from the defendant, D'Amico, for the commissary at Bellevue, on the tenth day of March, 1915, one barrel of wine, which was on that day or the following morning delivered at Bellevue by the servants of D'Amico. Paqua further testified that he paid for the barrel of wine, after receiving a bill therefor. A bill or statement showing a charge on March 10, 1915, of thirty-one dollars for fifty-two gallons of wine was admitted in evidence without objection; and this statement, Paqua testified, was the one obtained by him from the store of D'Amico when settlement was made for the wine, the defendant being present·at the time. Another witness for the state, Louis Le ˉFieri, a brother-in-law of Paqua, testified that he was with Paqua when he talked to the defendant about buying a barrel of wine; and that Paqua later showed him a barrel in the store at Bellevue which was not there on the morning of the day they went to D'Amico's place in Wilmington, but was there in the afternoon of that day or the next morning; and this was the same barrel of wine, which according to the testimony of Paqua, had previously been purchased by him of the defendant for Joseph Le Fieri. In addition to the testimony above mentioned, another witness—Armstrong, a deputy internal revenue collector—testified that the defendant when questioned by him first denied making the alleged sale, but afterwards, when shown the bill or statement which contained his initials, admitted that he had sold the barrel of wine to the manager of the commissary at Bellevue.

PENNEWILL, C. J., after stating the facts, delivering the opinion of the court:

The assignments of error are nine in number, and are all covered by certain contentions made by the defendant in his brief,

which will be considered by the court in the order in which they were argued.

The first and second contentions are as follows:

(1)   That the testimony produced by the state having failed to establish by clear, competent and sufficient evidence, the sale of a barrel of wine, the court should have directed a verdict for the defendant.

(2)   That the transaction involving a barrel of wine, which occurred between the defendant and Joseph Le Fieri was a contract to sell and not a sale.

The question raised by these contentions is this: Was there sufficient evidence of the sale charged in the indictment to warrant the jury in finding a verdict of guilty?

We have set out, substantially, the evidence produced by the state respecting the sale of a barrel of wine by the defendant to Joseph Le Fieri, and it is unnecessary to repeat it.   It is sufficient to say that one witness testified that he bought from the defendant for Le Fieri, to be delivered at his commissary at Bellevue, a barrel of wine, at the time stated in the indictment. This testimony was corroborated in material parts by another witness.   A third witness testified that the defendant admitted to him that he had sold the barrel of wine to the manager of Le Fieri's commissary.   None of these witnesses were shown to be unworthy of belief.   There was considerable testimony produced by the defendant that was contradictory of that produced by the state. Indeed, the evidence respecting the sale was very conflicting. The defendant contends that there was a decided preponderance of evidence showing there was no sale as charged in the indictment.

But even if the evidence was very conflicting, or there was a preponderance in favor of the defendant, the court below could not for that reason have instructed the jury to return a verdict of not guilty.   The law is well settled in this state that the jury are the judges of the credibility of witnesses and of the weight and value of their testimony.   They may believe some and disbelieve others.   It is equally well settled that where there is any evidence upon which a verdict of guilty could be reasonably based, the court will not take the case from the jury or set aside the verdict.

The court are of the opinion that there was sufficient evidence
in this case of an unlawful sale of liquor, as charged in the indict-
ment, to warrant the jury in finding against the defendant. If
the testimony of the state's witnesses was true, the transaction in
question was a sale and not a contract of sale. The price was
agreed upon and paid; and the barrel of wine was on the same
day, or the following morning delivered to Le Fieri at his com-
missary at Bellevue.

The third contention of the defendant is: That this transaction
occurred wholly within the City of Wilmington, and even if it
amounted to a sale contrary to law, the Municipal Court was
vested with sole and exclusive jurisdiction of the offense, and the
court below was, therefore, without jurisdiction.

The defendant's fourth contention is based upon the court's
charge,—that the proof as to the place of sale was sufficient if it
was shown that it was made somewhere in New Castle County.

In each of these contentions the jurisdiction of the court below
is denied, and a determination of the question raised involves
some consideration of two cases heretofore decided in this state,
viz: *State v. Mundy*, 1 *Boyce* 40, and *Dennis v. State*, 5 *Boyce* 298.

The case last mentioned is the later case, and the law declared
therein should be upheld unless there is good and sufficient reason
to disregard it.

In that case the court said, that a careful examination of the
act passed April 5, 1881, disclosed the purpose of the Legislature
to provide penalties for two classes of offenders: (1) Those
who are not licensees; and (2) those who are licensees. And it
was held that the municipal court has sole and exclusive jurisdic-
tion of the first class in the city of Wilmington, but is without
jurisdiction in any case in which the accused is a licensee, whether
the license authorized the sale complained of or not.

[5] This court can see no reason to question the classifica-
tion made in the Dennis Case, or the jurisdiction of the munici-
pal court as therein declared. The jurisdiction of said court
being confined to those cases in the City of Wilmington where
the defendant is not a licensee, it could not have acquired juris-
diction of the case tried below in which the defendant was a
licensee. The court below was the only court in which the defend-
ant could be tried.

In the defendant's fifth, sixth, and seventh contentions it is urged that the court below erred in permitting Joseph M. Armstrong, deputy collector of internal revenue, a witness called by the state, to testify as to facts obtained by him in his official capacity.

[6]  This contention is based upon the following rule promulgated by the United States Treasury Department and relating to collectors of internal revenues, viz.:

"They will decline to testify as to facts contained in the records, or coming to their knowledge in their official capacity; and this prohibition is hereby extended to include also internal revenue collectors, storekeepers and gaugers and agents."

Assuming that the facts concerning which Armstrong testified came to his knowledge in his official capacity, which we need not decide, the court are inclined to think that the letter from the Assistant Secretary of the Treasury granting the witness permission to testify in the case waived the requirement of the rule, and the privilege thereby conferred. But, even if that be not so, the court are of the opinion that the rule was made for the protection of the Treasury Department and not of defendants in criminal cases. The witness might have declined to testify because of the rule, but did not do so, and if he violated the direction of the Department he is amenable to it alone. . Certainly his disregard of the requirement cannot be invoked for the protection of the defendant. In all the cases cited by the defendant upon this point the witness declined to testify, and that fact distinguishes from the present case. The rule says that the officers mentioned therein "will decline to testify," etc. It seems clear to the court that if such an officer does not decline to testify, or claim the privilege the rule was designed to confer, the defendant could not claim it for his own benefit. The testimony was, in our opinion competent, and it was not error in the court below to admit it.

In his eighth contention the defendant complains, that the court below erred in refusing to allow the defendant to answer the following questions:

"Q.  To your personal knowledge was any letter, or were any letters written to Armstrong in which you denied having sold a barrel of wine?"
"Q.  What conversation, if any, was there had between you, about being able to get revenue stamps?"

[7, 8] In regard to the first question it may be said that, if the letters inquired about were relevant and material, they would have been the best evidence, but no proper effort was made to get them, neither were copies offered in evidence. But even if they had been procured and offered they would have constituted what is known in the law as self-serving testimony, and for that reason inadmissible. It may be further said, in respect to this contention, that if the court erred in refusing to allow the defendant to answer the question, it was harmless. The defendant denied that he sold the barrel of wine in question or that he had violated the law, and if he had been permitted to answer the question referred to it would have added little, if anything to such denial, because in effect it would have been the same, and the verdict would not have been different.

In regard to the second question, it is sufficient to say: We cannot see how any conversation "about being unable to get revenue stamps" could be material to any issue in the case.

[9] In his last contention the defendant insists that the court below erred in permitting Louis Le Fieri to answer this question:

"Q. When you came in to get wine that morning, was there a barrel of wine at the commissary?"

The court are unable to see how this question and the answer, "No, sir", could have been harmful or prejudicial to the defendant. But, even if it was, we are clearly of the opinion that the question was admissible. The state was endeavoring to show that a barrel of wine was brought to the commissary on the day of the alleged sale or the following morning, and after the transaction between Paqua and the defendant. It was, therefore, permissible to prove by the witness that there was no barrel of wine in the commissary in the morning of the day the witness and Paqua went to the defendant's store, and Paqua negotiated for the barrel of wine, which he testified was at the commissary in the afternoon of that day or the following morning.

We find no error in the record of the trial court and the judgment below is, therefore, affirmed.