Cullen *v.* Hartford A. & I. Co., Appellant.

Argued October 24, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*J. A. Welsh,* for appellant.

*Richard H. Klein,* for appellee.

Opinion by Keller, J., January 25, 1933:

Plaintiff brought this action upon a policy of insurance covering his Gardner sedan automobile, to recover the damages which he sustained because of the destruction of his car in a collision with another auto-

mobile. The policy was dated June 1, 1929. The accident occurred on June 10, 1929. The insurance company defended on the ground that the insurance was fraudulently applied for and obtained after the collision occurred.

The policy was obtained through D. J. Friel, the agent of the defendant company at Mt. Carmel, who countersigned and delivered the policy to the plaintiff. The evidence was overwhelming that Friel was the agent of the defendant within the definition of paragraph (a) of section 601 of the Act relating to Insurance, approved May 17, 1921, P. L. 789, as amended by the Act of May 8, 1929, P. L. 1660, with authority to issue and countersign policies on its behalf, and not merely to solicit risks and collect premiums; for his countersignature appeared on this policy, as well as on others issued through his office, and without it the policy, by its terms, would not have been valid. The company did not dispute his authority to countersign the policy provided it was applied for, and the application accepted, prior to the collision.

The only real question of fact was whether the policy had been applied for and issued prior to the accident, as alleged by the plaintiff, or afterwards, as claimed by the defendant. This question was submitted by the court below to the jury in a charge that was eminently fair and to which no exception could be taken if the evidence in the case warranted the submission. The verdict in favor of the plaintiff resolves all disputed questions of fact in his favor; and consequently on this appeal the evidence must be viewed in the light most favorable to him.

There is practically no doubt that prior to February, 1929, the plaintiff owned two automobiles, a Gardner and a Packard, which he had insured, through Friel, in two companies for which Friel had formerly acted as agent, but which he no longer represented—the

policies having been issued without the knowledge of those companies; but of this, of course, the plaintiff was ignorant. In February, 1929, the plaintiff purchased a new 1929 model Gardner sedan, in place of the car of the same make, and a short time thereafter told Friel that he wanted the insurance fixed to cover it. Pursuant to Friel's request he gave up his policies, and applied for new insurance covering both cars,— two policies—in the defendant company and he testified that the policies were delivered to him prior to the accident, together with identification cards bearing the numbers of the policies. His wife corroborated him and a disinterested witness named Muldowney testified that in the middle of May, 1929, he heard a conversation between Friel and the plaintiff in the course of which the plaintiff asked Friel about the policies on his cars and the latter said the application had gone in, but asked him to send the numbers—presumably of the cars—up to his office. Friel himself testified that he had sent in the application some time before the policy was issued, but as he needed the numbers on the new car it could not be issued until he obtained them; that he sent in the numbers on a new application on the Saturday preceding the accident and received and delivered the policies before the accident.

As opposed to this the defendant produced an application for insurance signed by the plaintiff which was stamped with the office rubber stamp as having been received on June 11, 1929, with another notation by rubber stamp "sent 6/14/29," which it was testified indicated that the policy was sent out on June 14, 1929. It was admitted that there were no records in the office to show when the application was received and policy sent out except these rubber stamp marks and the person who made them was not called as a witness. The application provided that insurance should begin as of June 1, 1929.

A strange fact in connection with this evidence is that notice of the accident on June 10th was at once sent by Friel by telegram to the defendant company and was forwarded by it to its agent or adjuster in the field, who received it on June 11th. If no application had been received and accepted prior to the accident, a notice from the agent of serious damage arising from a collision would have at once disclosed that no liability existed because the plaintiff was not a policyholder; and disclaimer of liability would promptly have been made. Instead an adjuster and other representatives of the company were sent who within a short while offered the plaintiff $2,100 cash or a new car of the same model, which the plaintiff refused. More than six months went by, during which this offer or some similar proposition was made, before the company first denied liability on the policy.

We have not attempted to give a summary of all the evidence produced by or in support of the contentions of plaintiff and defendant respectively; but only enough to show that the court could not decide as matter of law that the plaintiff's evidence was not for the consideration of the jury; and if for the jury, than its credibility was for them.

It was shown that the number of the policies issued at the defendant's Philadelphia office did not run consecutively. A record made by one of the officers—apparently only from the rubber stamp notation, as before stated,—showed the following: Application for No. 288978 was received June 13, 1929, policy issued June 14, 1929; No. 288979 application received June 11, 1929, policy issued June 17, 1929; No. 288980 (policy in suit) application received June 11, 1929, policy issued June 14, 1929; No. 288981 (Packard policy) application received June 11, 1929, policy issued June 10, 1929,—but this latter date was afterwards corrected

to June 14, 1929; No. 288982 application received June 11, 1929, policy issued June 15, 1929.

From the loose manner in which the defendant company's records were kept it was possible for the jury to find that the applications were, in fact, signed, forwarded and approved prior to the accident and that a mistake was made by a clerk in applying the rubber stamp. There is no other reasonable explanation for the action of the company in accepting notice of the accident, without disclaimer of liability, sending a representative to adjust the loss and actually offering $2,100 in payment, in the face of records—if a rubber stamp notation can be so called—showing an application for insurance received the day the adjuster got word of the accident from the company and a policy issued three days after he started to adjust the loss.

It is not our province to pass upon the facts, beyond seeing that there is evidence to support the verdict. The granting of a new trial because the verdict is contrary to the evidence is peculiarly for the lower court and where it has refused to grant one for that reason, we will not ordinarily interfere.

The evidence of Livingston, a dealer in Gardner automobiles, who sold the car to the plaintiff, and had seen it in May, based also, in part, on the number of miles it had been driven and its condition just prior to the accident as testified to by the plaintiff and his wife, was admissible on the question of value: Uhr v. Davidyan, 76 Pa. Superior Ct. 548, 550; Rodgers v. Studebaker Sales Co., 102 Pa. Superior Ct. 402, 406.

The assignments of error are overruled and the judgment is affirmed.