ROLAND E. STEVENS *v.* ALFRED T. WRIGHT.

February Term, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed May 7, 1935.

*Paul Gilioli* for the plaintiff.

*Raymond Trainor, William S. Pingree,* and *Henry F. Black* for the defendant.

MOULTON, J. This is an action for libel. The plaintiff is an attorney at law, and at the times here material was acting as counsel for the town of Hartford. The defendant is the managing editor of the *White River Junction Landmark,* a newspaper circulating in Hartford and the vicinity, and in complete control of the policy of the paper. He is also the president of the Right Printing Company.

The declaration is in two counts. The first alleges the publication, in the issue of December 7, 1933, of the *Landmark,* of a letter signed "Wm. Miller, Jr., Secretary of the Independent Voters' League" commencing "Public Enemy No. 1, of the Town of Hartford has, officially, shown his face," the material part of which is as follows: "The selectmen have received two petitions regarding the H. H. S. one petition from the 'Independent Young Voters' League of the Town of Hartford,' and the other from Mr. Stevens. The selectmen entrusted Mr. Stevens as town attorney with *both* petitions, instructing him to put *both* petitions into legal form for the town warning, which he said he would do. However, Mr. Stevens didn't bother with our petition at all. But he did bother with his own, and put it into legal form for the warning. When Mr. Stevens presented the warning for the selectmen's signature, they noticed only one petition in it. Mr. Stevens remarked that our petition wasn't legal. Now Mr. Stevens knows and we all know, that it was his *duty* as town attorney to put our petition into legal form. This shows that Mr. Stevens has proved himself dishonest in public office; that he attempted to trick the selectmen and citizens of

the town so that he could control the next special town meeting in the way that Roland Stevens wanted it to be controlled only to end in a worse muddle than ever before.'' .There is no innuendo explanatory of the phrase ''Public Enemy No. 1,'' but the plaintiff treats it in his brief as referring to the specific charge of dishonesty in public office, and so do we.

The second count alleged a letter from the defendant, as president of the Right Printing Company, Inc., to the plaintiff, and the sending a copy of it to the plaintiff's wife, concerning an account claimed to be due the printing company from the plaintiff, referring to the plaintiff's ''tricky dishonest method used in trying to avoid paying this bill.''

Among other pleas, the defendant justified himself by asserting the truth of the matters contained in the alleged libels, and the only questions before us are raised by this defense. There is no dispute as to the publication, or as to the defamatory nature of the writings, or as to the sense in which the words ''dishonest'' and ''tricky'' should be taken as applied to the situation.

In Seelman on Libel and Slander, par. 18, p. 8, the learned author says: ''A libel is an accusation in writing or printing * * * against the character of a person * * * which affects his reputation, in that it tends to hold him up to ridicule, contempt, shame, disgrace, or obloquy, to degrade him in the estimation of the community, to induce an evil opinion of him in the minds of right-thinking persons, to make him an object of reproach, to diminish his respectability or abridge his comforts, to change his position in society for the worse, to dishonor or discredit him in the estimation of the public, or his friends and acquaintances, or to deprive him of friendly intercourse in society, or cause him to be shunned or avoided.'' See, also, *id.* par. pp. 4-5. And so where it is charged that one has violated his public duty as a public officer. *Id.* par. 28, p. 32.

The verdict and judgment in the trial court were for the defendant, and the cause is before us on the plaintiff's exceptions.

At the close of all the evidence the plaintiff moved for a directed verdict, upon the ground that the evidence, taken in the light most favorable to the defendant, failed to show the truth of the alleged libels. The motion was denied, subject to his exceptions.

■■ That we must, in passing upon such a motion, take the evidence in the most favorable light for the party having the

motion to contest; that we must exclude the effect of modifying evidence; that we are not concerned with the weight of the evidence, but only with its tendency; and if there is evidence fairly and reasonably tending to support the issue, the question must be submitted to the jury; are principles so well understood and so many times announced that a reference to our numerous decisions upon the subject is unnecessary. The burden here was upon defendant to maintain his plea. *Sperry* v. *Wilcox,* 1 Met. (Mass.) 267, 270; *Sacchetti* v. *Fehr,* 217 Pa. 475, 66 Atl. 742.

Regarding the issues raised by the plea to the first count in the declaration, the evidence on behalf of the defendant tended to show the following:

There was division of opinion among the citizens of the town of Hartford concerning the high school building. One faction advocated a new school house at a cost of $100,000; the other the making of alterations and additions to the existing school house at a cost of $30,000. In either case, the money was to be obtained through a bond issue. The plaintiff was a protagonist of the latter scheme and had previously been active in opposition to the expenditure of a greater sum. An organization known as the ''Independent Voters' League,'' of which Miller, the author of the letter, was secretary, strongly favored the erection of a new building. A special town meeting to vote upon the matter was in contemplation. Under the statutory procedure in such a situation (P. L. 3604, 3605) first the school board must at a regular or special meeting called for that purpose, by a two-thirds vote, resolve that the public interest or necessity demands improvements and that the cost of the same will be too great to be paid out of the ordinary annual income and revenue; and at a subsequent regular or special meeting called for that purpose, by the same vote, order the submission of the proposition of making such improvements, and of incurring a bonded debt to pay for the same, to the qualified voters of the municipal corporation, at a meeting to be held for that purpose. On November 28, 1933, the plaintiff, who was then town counsel, prepared a petition, and obtained the requisite number of signers, calling for the submission of the $30,000 proposition. On the same day Miller prepared a similar petition advocating the expenditure of $100,000. Miller called at the plaintiff's office, informed him of what he had done, and in-

quired whether he would oppose the project. The plaintiff told him that he would oppose it, and that he had already drawn up a petition for the expenditure of $30,000. Miller then said that he was ignorant of legal matters, and asked the plaintiff, as town counsel, to give the same attention to his petition, with respect to its legality, as he would give to the other. The plaintiff assured him that he would do so. Miller left the office and thereafter obtained the requisite number of signers, and handed his petition to George G. Nichols, the chairman of the board of selectmen of the town. Meanwhile, the plaintiff attended a meeting of the school board, presented his petition, and prepared a resolution concerning it, as required by the statute, which the board adopted. That same evening there was a meeting of the board of selectmen, at which the plaintiff was present. Miller's petition was handed to him, and he was asked by the chairman to draw up a warning for a town meeting to be held on December 26, to include subject-matter of both petitions, and "to take care of the legal matters of the petitions so that the voters could have a chance to vote on either project." On November 29, there was another meeting of the school board at which the plaintiff drafted an order for the submission of the $30,000 project to the voters, which was adopted. He did not present the other petition to the board or ask them to pass a resolution with regard to it, which, together with an order for its submission, would be necessary to make it a proper and legal subject of a vote. He referred to it only by saying that he understood or had been informed that another petition was being circulated. He did not tell the board that it had been signed, and was then in his possession under instructions from the selectmen to see that the requisite legal steps should be taken regarding it, or that he had given Miller to understand that he would, as town counsel, attend to these matters. On December 1, the plaintiff gave Nichols a warning, which he had prepared, calling for the submission of both propositions, but informed him that, in his opinion the project for a new school building a a cost of $100,000 could not be legally submitted. He did not, however, give the reason for this, which was that it had not been made the subject of a resolution and order by the school board. A few days thereafter, the plaintiff with the knowledge and consent of the selectmen, went to Boston to consult with a law firm which had charge of the matters connected

with the proposed bond issue. He returned on December 5 with a warning, prepared in Boston, covering only the $30,000 project, which he presented to the selectmen. At the time the members of the school board, and several others were present. The plaintiff was asked why the subject-matter of the other petition had been omitted and for the first time divulged that it was because it had not been presented to the school board. An acrimonious discussion ensued, the upshot of which was that the plaintiff expressed a willingness to put in proper shape whatever proposition the selectmen wished presented, and, after a conference, the advocates of the new school house abandoned the project, and agreed upon a resolution calling for the expenditure of $64,000, which was adopted and ordered submitted as an alternative to the $30,000 resolution.

With the record standing thus, it cannot be said that there was no testimony fairly and reasonably tending to support the defendant's plea in justification of the alleged libel contained in the first count. The plaintiff argues that the published letter was directed against him as a public officer, and that he was not such. But the record fails to show that this point was raised below, and it is unavailing here. *Higgins* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394. The trial proceeded upon the theory, adopted by both parties, that he was acting in a public capacity, and the plaintiff cannot now be heard to claim that such theory was erroneous. *Bagley* v. *Cooper*, 90 Vt. 576, 579, 99 Atl. 230; *Cummings* v. *Connecticut Gen'l Life Ins. Co.*, 101 Vt. 73, 87, 142 Atl. 82. In fact, in his declaration he described himself as a public officer, and claims damage to his reputation as such. He was, although serving without compensation, an official of the town in the sense that the legal affairs of the town were committed to his care.

It was his duty to follow the directions of the selectmen, and it was evident that they desired both projects to be submitted to the judgment of the town meeting so that a choice might be made between them. The instruction that the plaintiff should take care of the legal matters involved in the petitions could be construed by the jury to mean, and to have been understood to mean, that all preliminary steps should be taken so that both could be legally inserted in the warning and so he made the subject of a vote, as well that the warning itself should be worded so as to include both. The promise made by the plaintiff to

Miller that he, as town counsel, would give the same attention to the legality of both petitions, was an assurance that he would see that the necessary legal steps would be taken to insure the submission of both projects to the voters, upon which Miller had the right to rely. As town counsel, the plaintiff was bound to act with all fidelity and fairness to both factions. He could not properly use his office to advance a proposition which he personally favored and neglect another. There was ample opportunity to present the $100,000 petition to the school board, but although he had it in his custody, he failed to do so. He argues that he was under no obligation to do anything about it because the Independent Voter's League had already consulted their own counsel. The defendant's evidence tends to show that all that such counsel had done was to draft the petition and that no legal advice had been given. But, were it otherwise, it was still the plaintiff's duty, under his instructions, to see that all proper steps were taken, and the petition had been put in his possession for this purpose. There was, therefore, evidence from which, taken most favorably for the defendant, the jury could reasonably find that the plaintiff had by concealment and artifice attempted to keep the subject-matter of the petition calling for a new school house from being submitted to the voters. There was no error in denying the motion as to the first count.

Passing to the evidence bearing upon the plea to the second count, we discover that its tendency was this: In December, 1931, the plaintiff asked the defendant to print for him a brief in a case then pending in the Supreme Court. After some haggling the price was agreed upon and the work was done. During the following month, a supplemental brief in the same cause was printed upon the same terms. The defendant knew that the plaintiff was acting as the attorney for the party in whose behalf the brief had been prepared, but he did not know the client or where he lived, or anything about him. The work was charged to the plaintiff on the books of the Right Printing Company, and, at monthly intervals, three bills were sent to him, which he did not pay, but to which he raised no objection. Then he came to the defendant's office, and requested the defendant to make out a bill to his client "so that he could collect his money for the job." This was done, and the statement was handed to him. There was no change in the charge upon the company's books, and thereafter monthly statements were sent

to the plaintiff, but no payment was made, and no objection raised. In September, 1932, the defendant asked the plaintiff "What about the bill you owe me?" and the plaintiff replied: "I owe you nothing; you have already made out the bill to Mr. Robertson (the client), and you must collect it from him." This was the first time that he had ever denied his liability to pay.

We are not concerned with the dubious taste of sending a copy of the letter to the plaintiff's wife. Our only inquiry is whether, from the evidence, the jury could reasonably conclude that the plaintiff had attempted to evade payment of the bill in the method specified therein. The plaintiff insists that there is no evidence that he contracted for the printing as his personal obligation, and that no circumstances are shown from which an express promise on his part to pay for the work can be inferred. He stresses the fact that the defendant knew that he was acting as attorney for the party in the cause. But this fact is not conclusive; even where the principal is disclosed a contract may be made by an agent with a third person in such terms that he, the agent, is personally liable for its fulfillment. *Camp* v. *Barber*, 87 Vt. 235, 239, 88 Atl. 812, Ann. Cas. 1917A, 451. Whether this is so is largely a question of intention, to be determined by the language of the contract, with reference to its subject-matter and the contemporaneous circumstances. *Hinsdale* v. *Partridge*, 14 Vt. 547, 552. Here the language attributed to the plaintiff in ordering the printing is capable of the construction that the printing was to be done for himself. It is not made to appear that the client's credit was understood to be pledged. The fact that the defendant accepted the order upon the credit of the plaintiff is evidenced by the entry upon the books and subsequent statements sent to the latter; and the failure to protest and ask for a correction tends to show that the plaintiff so understood the situation and was content with it. The request for a bill made out in the name of the client, was not accompanied with a notice that the account should be changed on the books. It was stated to be for the special purpose of enabling the plaintiff to collect his pay from the client. On the record, as presented to us, we hold that there was evidence upon which the jury could find that, at the time of contracting for the printing, both plaintiff and defendant intended and understood that the former would be personally liable; and

could find, also, that the plaintiff's ultimate refusal to pay because a statement had been made out to the client, was an attempt to evade his obligation. Error does not appear in the denial of the motion as to the second count.

The plaintiff moved to set the verdict aside, and excepted to the denial of this motion. The ground that the verdict was wholly unsupported by the evidence is covered by what we have already said in passing upon the motion for a directed verdict. The grounds that the verdict was against the evidence and against the weight of the evidence are the same in meaning. *Daniels* v. *Preston*, 102 Vt. 337, 339, 148 Atl. 285; *French* v. *Wheldon*, 91 Vt. 64, 68, 99 Atl. 232. But the motion upon these grounds was directed to the sound discretion of the trial court, and the ruling will not be disturbed in the absence of a showing of an abuse of discretion or a failure to exercise it. *Butler* v. *Favreau*, 105 Vt. 382, 383, 166 Atl. 1; *Sargent* v. *Robertson*, 104 Vt. 412, 420, 160 Atl. 182; *Porter* v. *Fleming*, 104 Vt. 76, 82, 156 Atl. 903; *Bradley* v. *Blandin*, 94 Vt. 243, 257, 110 Atl. 309. No abuse of, or failure to exercise, discretion is made affirmatively to appear. The ground that the verdict was contrary to the instructions of the court is based upon a charge that if the plaintiff was acting as attorney and agent for his client in ordering and printing of the briefs, and did not contract upon his personal responsibility, he was not legally liable for the bill. But, as we have seen, there was evidence from which the jury could find the contrary. The grounds that the verdict was a mistake and was the result of passion and prejudice are not briefed, further than by the statement that the evidence shows that this was so. This is insufficient briefing. *Northern Trust Co.* v. *Perry*, 104 Vt. 44, 46, 156 Atl. 906.

The exceptions to the verdict and to the judgment, being based upon the claim of the absence of supporting evidence, do not require separate treatment. All questions raised have been considered.

*Judgment affirmed.*