HARVEY N. HUTCHINS, Appellant, v. THE STATE OF DELAWARE, Appellee.

(*July* 13, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*James H. Hughes, III,* and *Harold C. Schmittinger* for appellant.

*George R. Wright,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 58, 1958.

BRAMHALL, J.:

The appeal in this case relates to the alleged abuse of discretion on the part of the trial court in refusing to grant a new trial on the ground that the verdict was contrary to the weight of the evidence; to the propriety of the admission of certain testimony relating to other offenses of defendant against deceased; to certain remarks of the trial court in the presence of the jury concerning testimony offered on behalf of defendant; and to the refusal of the trial court specifically to charge the jury as requested by defendant as to reasonable doubt.

The pertinent facts upon which the conviction in this case was based are substantially as follows: The defendant and deceased were man and wife and lived with their foster son, Robert, eleven years of age, near Thompsonville, Kent County. On the afternoon of July 27, 1957, defendant and Robert returned home from work. At the request of defendant, Robert carried a re-

volver which was in the truck to the house and placed it on the bureau in the front room. Early in the evening of the same day defendant, deceased, and their son, Robert, went in their car to the Harrington Fair Grounds. Both parents had been drinking. When they arrived on the Fair Grounds, they did not get out of the car, but remained in the Fair parking lot for some time while deceased was asleep on the back seat. Later they all returned to their home at approximately 9:30 o'clock in the evening. The home was set back several hundred feet from the public road and was reached by a lane through the woods. It was then quite dark and there were no artificial lights after the lights in the car had been turned off. They all got out of the car and began walking toward the house. Robert was the first to reach the door. He could see deceased and defendant quite plainly about 13 ft. away. The boy testified that he saw defendant reach into his pocket, withdraw his hand with a gun in it, and fire two shots into the ground. Robert testified that he saw defendant, with his arm still extended, turn his wrist and fire the gun at deceased.

The gun in question was found in the grass three or four feet away from the door of the house. No tests for fingerprints were made, but it was clearly demonstrated that the bullet extracted from the body of deceased was fired from the gun in question and that it had been held, at the time of the firing, not more than three inches from the breast of deceased.

In his own defense defendant gave a history of his relationship with his wife, some thirty-four years of cohabitation, which were on the whole mutually satisfactory. Defendant testified that when he gave the gun to Robert in the afternoon, this was the last time he saw it; that upon their return to their home from the Fair Grounds, both he and Robert assisted deceased from the car to the house; that deceased and Robert approached the house first and apparently deceased went in; that defendant heard something break inside; that as he approached the door and prepared to step up, deceased suddenly fell out the door or off the top step in his arms; that as defendant grabbed her,

a gun went off in his face; that he did not know exactly what had occurred; that it was very dark at the time, and when deceased suddenly fell against defendant, the flash of the gun and the explosion frightened and deafened him; that he did not at first believe that deceased had been shot; that when he realized that Robert had gone for help, he sat in the house until the ambulance arrived. Upon cross-examination, over the objection of defendant's counsel, the State was permitted to question defendant concerning previous occasions when he beat or slapped his wife and concerning a previous conviction of assault and battery upon her.

Defendant concluded his defense by producing data, of which the Court took judicial notice, that the moon was new on July 26, 1957, and that on July 27th of that year, the evening of the shooting, the moon set at 8:24 P.M., just five minutes after the setting of the sun.

 Defendant complains of an alleged abuse of discretion on the part of the trial judge in refusing to grant a new trial on the ground that the verdict was clearly against the weight of the evidence. Defendant states that the verdict in this case rested entirely upon the testimony of an eleven year old boy, whose evidence was so uncertain and contradictory that it ought not be believed. Specifically, defendant contends that Robert's testimony that he could see defendant shoot deceased by the light of the moon was thoroughly discredited by evidence offered by defendant showing that there was no moon that evening at the time of the shooting; that, as demonstrated by the testimony of the medical experts, it was physically impossible for deceased to have been shot in the manner testified to by Robert; that, although Robert testified that at defendant's request he placed the gun on the bureau in the late afternoon on the day of the shooting, the fact that the gun was the one used on deceased has not been explained.

Defendant further contends that under Rule 33 of the *Rules of Criminal Procedure of the Superior Court, Del. C. Ann.* (the

same as Rule 33 of the *Federal Rules of Criminal Procedure;* 18 *U. S. C.*), courts in this state may now award a new trial in cases, even though there is substantial evidence to support a conviction, where the weight of the evidence is to the contrary. He states that the rule of law laid down in *D'Amico v. State,* 6 *Boyce* 598, 102 *A.* 78, to the effect that a trial court may not award a new trial if there is sufficient evidence to sustain a conviction, has been overruled by this rule. He refers to *State v. Biter,* 10 *Terry* 503, 119 *A.* 2d 894, in which the trial judge in reaching his decision 'assumed' that in the light of Rule 33, the language referred to in the D'Amico case is no longer applicable.

We do not reach the latter question since, in the view we take of this case, such determination is unnecessary.

A motion for a new trial on the ground that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court and the action of that court would be reviewable only where there is a clear abuse of discretion. *Cullen v. Hartford Acc. & Ind. Co.,* 108 *Pa. Super.* 19, 164 *A.* 67; *Lyons v. Armstrong,* 125 *A.* 565, 2 *N. J. Misc.* 710; *Stevens v. Wright,* 107 *Vt.* 337, 179 *A.* 213. It is a well-settled general rule of law that the jury are the sole judges of the degree of credit to be given to the testimony and that the determination of the creditability of witnesses is not within the province of the reviewing court. See *Warren on Homicide,* Vol. 4, Sec. 373, page 583. Where the verdict has been approved by the trial court in a trial where the evidence is conflicting, that verdict will not be disturbed on appeal. The fact that the trial court has approved the verdict and has refused to set it aside and grant a new trial, of itself, will generally have considerable weight with the appellate court. *Warren on Homicide,* Vol. 4, Sec. 374.

We can readily understand that the jury might have been somewhat uncertain about the guilt of defendant. The only positive evidence offered by the State was the testimony of an eleven year old boy. Nevertheless, this testimony in its identification of

defendant as the one who fired the fatal shot was positive. It is reasonable to believe that the witness was able to see—as he testified he was—because defendant himself testified that he saw Robert at the same time. At any rate, the evidence was conflicting. Defendant himself concedes that his guilt was a matter for the determination of the jury. The jury and the trial judge who heard the testimony of the State's witness were much better able than this court, which has only before it a record, to determine the probative effect of such testimony. An appellate court may not pass upon the weight of the evidence and determine whether it would have arrived at the same verdict; its province is to determine only if there is relevant evidence given to the jury which would properly sustain a conviction. *Commonwealth v. Ransom,* 169 *Pa. Super.* 306, 82 *A.* 2d 547; *Briley v. State,* 212 *Md.* 445, 129 *A.* 2d 689; *State v. Dunphy,* 24 *N. J.* 10, 130 *A.* 2d 606. We cannot therefore say, as a matter of law, that the trial court in refusing to set aside the verdict of the jury and award defendant a new trial was guilty of an abuse of discretion.

■■ Defendant takes exception to the admission in evidence by the trial judge, over defendant's objection, of testimony relating to other incidents in which defendant was alleged to have pointed a gun at deceased. Defendant also excepts to the elicitation from defendant during his cross-examination by the Deputy Attorney General of an admission of defendant's prior conviction for assault and battery upon the deceased. Defendant contends that the admission of this testimony does not come within any of the exceptions to the general rule that evidence of the commission of other offenses is not admissible.

These objections are clearly without merit. It is generally competent in homicide cases to show all facts and circumstances relating to ill treatment, personal violence, threats, and ill feeling toward the deceased. It may also be shown that a wife brought suit against her husband for non-support or had had him arrested for threats or cruelty as indicating a state of mind or desire on the part of defendant to kill. *State v. Brown,* 3

*Boyce* 499, 85 *A.* 797; *State v. Garner, Del.,* 145 *A.* 2d 68. See *Wharton's Criminal Evidence* (12th Ed.), Vol. 1, Sec. 175. In the case of a defendant on trial for wife murder, such evidence has frequently been admitted for the purpose of showing quarrels or discord or assault as evidencing the state of mind of accused or malice. *State v. O'Donnell,* 176 *Iowa* 337, 157 *N. W.* 870; *People v. De Moss,* 4 *Cal.* 2d 469, 50 *P.* 2d 1031; *Reeves v. State,* 201 *Ala.* 45, 77 *So.* 339. See *Warren on Homicide,* Vol. 2, Sec. 198, page 260.

We think that the evidence of ill feeling and other crimes in this case was admissible for an additional reason. Defendant had offered evidence to show a good relationship between him and deceased. In addition, one of the inferences which might have been drawn from his testimony was that the death of deceased was accidental. Evidence of threats and commission of other offenses against the deceased were clearly admissible to rebut defendant's testimony as to the good relationship alleged to have existed between defendant and deceased and also to rebut the inference that the death of deceased was accidental, as suggested in the testimony of defendant.

■■■ Defendant complains of certain remarks of the trial court relating to documentary evidence offered by defendant, based upon which the trial court was requested to take judicial notice of the fact that there was no moon at the time of the shooting. This evidence was offered for the purpose of contradicting the testimony of Robert, the State's only eyewitness, to the effect that he was able to see defendant shoot deceased "by the light of the moon".

The trial judge at first stated that he did not understand the materiality of such evidence because defendant himself testified that he saw Robert that night approximating the distance from the witness stand to the lectern in the courtroom. After a short colloquy between the court and counsel for defendant, the trial judge admitted the testimony with the following remark:

"All right, if you want to offer it, why, I will accept it. After all, the jury has heard all of the testimony and they know the facts."

We do not see how any constitutional right of defendant was violated or how defendant was otherwise prejudiced by these remarks. Remarks in criminal prosecutions must be considered in their context in determining whether they constitute prejudice and reversible error. *Commonwealth v. Cannon*, 386 *Pa.* 62, 123 *A.* 2d 675, *certiorari* denied 352 *U. S.* 898, 77 *S. Ct.* 139, 1 *L. Ed.* 2d 90. If it may be said with fair assurance that the effect of such remarks was slight, if any at all, and had no substantial influence upon the jury, an appellate court will not reverse. *Commonwealth v. Phillips*, 183 *Pa. Super.* 377, 132 *A.* 2d 733. The trial judge was apparently somewhat uncertain as to the exact purpose for which this evidence was offered. His remarks were made while trying to reach an understanding of this purpose. When it was explained to him, he at once admitted the evidence. As the trial judge indicated, the jury had heard the testimony and would be guided by their recollection, not the recollection of the trial judge. The trial judge in his charge also instructed the jury generally to this effect.

 Defendant contends there was error on the part of the trial judge in refusing to charge the jury, as requested by defendant, that there was no burden of proof upon the defendant.

The requested point for charge is as follows:

"The defense in this case is that the Defendant Harvey Hutchins did not fire the shot that killed his wife. It amounts to a general denial of the indictment. In attempting to support this defense the Defendant has testified to what he claims were the actual facts and circumstances of the shooting. It is important for you to remember that, in order to be acquitted of the charge against him the Defendant does not have to prove to you by a preponderance of the evidence that the shooting happened the way he says it did. The burden of the proof is always

upon the prosecution to prove beyond a reasonable doubt that the Defendant committed the offense charged. If the prosecution fails to sustain that burden, you must find the Defendant not guilty, even if you are not convinced of the truth of the Defendant's account of the shooting."

Defendant in his brief and at the argument readily concedes that the trial court gave to the jury the customary instructions as to burden of proof. He does not contend that these instructions were technically incorrect. The purpose of defendant's request, as stated in his brief, was to endeavor to compensate for the somewhat incoherent testimony given by defendant at the trial by having the trial judge specifically call to the jury's attention the fact that even though they might not believe defendant's testimony, nevertheless, if they should find that the State had failed to prove its case beyond a reasonable doubt, defendant should be acquitted.

The rule has long been established that the refusal to give a requested instruction, even though it may be a correct statement of the law, does not constitute reversible error if such request is substantially covered by the trial court in other instructions. See citations in 53 *Am. Jur., Trial,* Sec. 527, p. 424. It is true that the instructions given by the trial judge in this case were general in nature, but this is sufficient if the jury may be able fully to understand the law applicable to all branches of the case. *United States v. Stoehr,* 3 *Cir.,* 196 *F.* 2d 276, 33 *A. L. R.* 2d 836, *certiorari* denied 344 *U. S.* 826, 73 *S. Ct.* 28, 97 *L. Ed.* 643. It is necessary only that defendant's request, if a proper one, be covered adequately by the trial court's instructions. *State v. Edgecomb,* 151 *Me.* 368, 120 *A.* 2d 284; *State v. Rogers,* 19 *N. J.* 218, 116 *A.* 2d 37; *State v. Myers,* 7 *N. J.* 465, 81 *A.* 2d 710, 15 *A. L. R.* 2d 1171; *Young v. Young,* 56 *R. I.* 401, 185 *A.* 901.

We think that defendant's request was adequately covered in the charge of the trial judge and that he was not guilty of

reversible error in failing to charge specifically as requested by defendant.

The judgment of the Superior Court will be affirmed.