# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 1602019886A&B |
| | ) | |
| REGINALD WATERS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 23, 2019
Decided: June 13, 2019

## OPINION

*Upon Consideration of Defendant's Motion for New Trial*
**DENIED**

Abby Adams (argued), Brian J. Robertson, and Cynthia Hurlock, Deputy Attorneys General, Department of Justice, State of Delaware, 820 N. French Street, 7th Floor, Wilmington, Delaware, Attorneys for the State.

Patrick J. Collins, Esquire, Collins & Associates, 716 N. Tatnall Street, Suite 300, Wilmington, Delaware, Attorney for Defendant.

**Rocanelli, J.**

## INTRODUCTION

Clifton Thompson was shot and killed on February 27, 2016. Defendant Reginald Waters was arrested on March 29, 2016 in connection with the homicide. The evidence presented by the State at the bench trial included historical Cell Site Location Information ("CSLI") which the State argued placed Defendant in the vicinity of the homicide. In addition to CSLI, the State presented direct evidence and indirect evidence which placed Defendant at the scene of the homicide. Defendant was convicted of the lesser-included offense of Manslaughter, as well as related charges. Before Defendant was sentenced, the Supreme Court of the United States issued its decision in *Carpenter v. United States* which requires a finding of probable cause for the issuance of a search warrant to obtain CSLI. The State did not obtain a search warrant based on probable cause to obtain CSLI for Defendant. Thus, Defendant has filed a motion for new trial, which is opposed by the State.

## PROCEDURAL HISTORY

After Defendant's arrest, a grand jury issued an indictment on June 6, 2016 for Murder in the First Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. Defendant's trial was originally scheduled for September 2017, but was continued to January 2018 upon Defendant's motion.

1

One week prior to the January 2018 trial date, Defendant's then-counsel filed a motion to withdraw at Defendant's request. Defendant waived his speedy trial rights and the Court granted the motion on January 9, 2018. Defendant's current counsel was appointed ("Defense Counsel") on January 12, 2018.

Trial was scheduled to begin May 10, 2018. Defense Counsel requested that the State produce the subpoena used to obtain records and subscriber information for Defendant's cell phone. On May 7, 2018, Defense Counsel renewed his request. The State did not respond. On May 9, 2018, Defense Counsel requested another continuance of the trial which the Court denied.

A jury was selected on May 10, 2018. Before the jury was sworn, Defendant requested a bench trial. Pursuant to Superior Court Criminal Rule 23(a), Defendant's request was submitted in writing and the State consented. The Court addressed Defendant personally regarding his constitutional right to a trial by jury. The Court was satisfied that Defendant's waiver was knowing, intelligent, and voluntary. Therefore, the Court approved Defendant's waiver and the case proceeded to a non-jury trial before this judicial officer from May 14, 2018 through May 23, 2018.

At the conclusion of the evidence and after closing arguments, Defendant was found guilty by the Court of the lesser-included offense of Manslaughter, as well as guilty of Possession of a Firearm During the Commission of a Felony, Possession of

2

a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. The Court ordered a pre-sentence investigation.

On June 22, 2018, the United States Supreme Court issued *Carpenter v. United States*.[1] The holding in that case prompted Defense Counsel to renew Defendant's pretrial request for the documents relied upon by the State in obtaining Defendant's cell phone records. Defense Counsel notified the Court that *Carpenter* may be applicable to Defendant's case. Sentencing was continued. Eventually,[2] all of the relevant applications, affidavits, and Court Orders used to obtain evidence for the Defendant's cell phone were unsealed and produced to Defense Counsel.

On December 17, 2018, in light of the newly discovered evidence and the *Carpenter* decision, Defendant filed a motion for a new trial pursuant to Superior Court Criminal Rule 33. After briefing, the parties presented oral argument. The record was closed on March 23, 2019.

## STANDARD OF REVIEW

A Motion for New Trial may be granted upon a motion by the Defendant "if required in the interest of justice."[3] If the trial was without a jury, the Court may "vacate the judgment if entered, take additional testimony and direct the entry of a

---

[1] 138 S.Ct. 2206 (2018).
[2] Significant delay resulted from counsel's unavailability due to the involvement of the assigned DAG and Defense Counsel to the trials addressing the uprising at James T. Vaughn Correctional Center.
[3] Super. Ct. Crim. R. 33.

new judgment."[4]  A motion for a new trial is within the sound discretion of the trial court.[5]  Viewing the evidence in the light most favorable to the State,[6] a motion for new trial will not be granted "if there was some probative evidence upon which a verdict of guilty could reasonably be based."[7]  The Court must refrain from granting the motion unless the verdict "appears to be against the great weight of the evidence."[8]

## *CARPENTER* IS APPLICABLE

In *Carpenter v. United States*, the United States Supreme Court addressed the question of "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements."[9]  Given its "deeply revealing" and "retrospective" nature, the Supreme Court held that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through historical cell phone location information and, therefore, Government acquisition of CSLI records constitutes a search within the

---

[4] *Id.*

[5] *State v. Rebarchak*, 2002 WL 1587855, at *1 (Del. Super. June 20, 2002) (citing *Hutchins v. State,* 153 A.2d 204, 206 (Del.1959)).

[6] *Id.* (citing *Price v. State*, 1996 WL 526013, at *3 (Del. Aug. 19, 1996)).

[7] *Id.* (citing *State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955)).

[8] *Id.* (citing *Storey v. Camper*, 410 A.2d 458, 465 (Del. 1979)).

[9] 138 S.Ct. at 2211.

meaning of the Fourth Amendment.[10] Accordingly, the Supreme Court declared that the Government must generally obtain a warrant supported by probable cause before acquiring CSLI records.[11]

Of particular concern to the *Carpenter* Court was that the Government acquired the CSLI records pursuant to a court order issued under a federal statute that simply required the Government to show "reasonable grounds" for believing that the records sought "were relevant to an ongoing investigation."[12] The Supreme Court explained that the required assertion of relevance to an ongoing investigation "falls well short of the probable cause requirement for a warrant."[13] Rather, the Court required "some quantum of individualized suspicion" to justify a search under the Fourth Amendment.[14]

"[A] decision of [the Supreme] Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered."[15] A criminal conviction in Delaware becomes final at the

---

[10] *Id.* at 2220.

[11] *Id.* at 2221.

[12] *Id.* (quoting the Stored Communications Act ("SCA"), codified at 18 U.S.C. 2703(d)). The SCA permits the government to compel wireless carriers to disclose sored telecommunications records upon presentment of a court order when the government meets this standard. *Id.*

[13] *Id.*

[14] *Id.* (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 560-61 (1976)).

[15] *U.S. v. Johnson*, 457 U.S. 537, 562 (1982).

time of sentencing.[16] *Carpenter*, a decision of the Supreme Court construing the Fourth Amendment, was issued on June 22, 2018. Defendant's conviction has not become final because sentencing has not taken place. Accordingly, *Carpenter* retroactively applies to Defendant's case.[17] Moreover, Defendant has not waived his right to challenge the CSLI evidence that was obtained by the State.[18] In addition, Defendant has standing to challenge that evidence.[19]

---

[16] *Jackson v. State*, 654 A.2d 829, 831-832 (Del. 1995) (explaining that the sentencing order is the "order appealed from" in our statutory scheme). *See also,* 10 *Del. C.* § 147; 10 *Del. C.* § 9904.

[17] The State concedes that the constitutional ruling and requirement of probable cause for government acquisition of CSLI set forth in *Carpenter* applies to Defendant's case.

[18] Defendant's motion is premised on the newly discovered CSLI seizure evidence as it relates to the applicability of *Carpenter*, which did not issue until June 22, 2018, a month after trial but before sentencing in this matter. Newly discovered evidence for the purposes of Rule 33 "must have been discovered since trial, and the circumstances must be such as to indicate that it could not have been discovered before trial with due diligence." *Hicks v. State*, 913 A.2d 1189, 1193-94 (Del. 2006). Defense Counsel experienced difficulty in discovering the evidence prior to trial and that difficulty could not have been overcome by exercising due diligence, as evidenced by the numerous pre-trial requests that went unanswered by the State.

[19] The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. A person's standing to claim the protections of the Fourth Amendment "depends not on a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Katz v. United States*, 389 U.S. 347, 454 (1967). Although the cell phone at issue was registered to a third party, it was established at trial that the cell phone was possessed and used by Defendant. When a defendant claims a possessory or proprietary interest in the property searched or seized, he is entitled to challenge a search of the areas in which the property was located. *Pitts v. State*, 1988 WL 113303, at *2 (Del. Sept. 27, 1988) (citing *Thomas v. State*, 1988

## DISCUSSION

### I.  The State's Use of the Pen Register Statute to Acquire Defendant's CSLI was Improper.

On February 28, 2016, the day after the homicide, the police applied under Delaware's Pen Register and Trap and Trace Device statute ("Pen Register Statute"),[20] for call detail and CSLI records for a cell phone number associated with Defendant. The application included a variety of information in support of probable cause for the interception of real-time CSLI so that police could locate and arrest Defendant. The Court issued an Order authorizing the use of a pen register and the procurement of *prospective* call detail and CSLI records ("Pen Register Order").[21] The police subsequently submitted a request to Defendant's wireless carrier for the installation of the pen register. Even though it was not within the scope of the Pen Register Order, the police also requested *retrospective* call detail records. The wireless carrier complied with the request and provided call detail records, including

---

WL 93398, at *1 (Del. Aug. 25, 1988)). Defendant has standing to challenge the search because Defendant had an actual and reasonable expectation of privacy in his movements as captured by CSLI.

[20] 11 *Del. C.* §§ 2430-2434.

[21] Pen registers are devices that "disclose only the telephone numbers that have been dialed–a means of establishing communication." *Smith v. Maryland*, 442 U.S. 735, 741 (1979). "Neither the purport of any communication between the caller and the recipient of the call, their identities, nor whether the call was even completed is disclosed by pen registers." *Id.* This distinction was integral to the Supreme Court of the United States holding that the installation and use of a pen register is not a "search" within the meaning of the Fourth Amendment, and hence no warrant is required. *Id.*

7

CSLI, going backwards in time for one month prior to the date of the Pen Register Order. Included in this time frame was the date of the homicide of Clifton Thompson. The retrospective CSLI was admitted into evidence at Defendant's trial without objection and the State argued that the CSLI placed Defendant in the vicinity of the homicide.

An order issued under Delaware's Pen Register Statute is not a permissible mechanism for accessing cell site records. By directing the procurement of CSLI, the Pen Register Order authorized more than what is contemplated by the Pen Register Statute. Furthermore, the State went beyond the scope of what was authorized by the Pen Register Order issued by this Court by requesting retrospective information.

**II.** **The Pen Register Order Used to Obtain Retrospective CSLI for Defendant's Cell Phone Was Not Supported by Probable Cause, and Therefore, in Light of *Carpenter*, the Search Constitutes a Violation of Defendant's Fourth Amendment Rights.**

Applying the recent United States Supreme Court decision in *Carpenter* to Defendant's case, the Court finds that the State's acquisition of Defendant's historical CSLI constituted a search under the Fourth Amendment. Thus, a search warrant based upon probable cause was required to obtain the CSLI evidence regarding Defendant's past movements. According to the Supreme Court, a mere assertion that CSLI evidence would be helpful to an ongoing criminal investigation

is not sufficient to satisfy the warrant requirement.[22]  Rather, "some quantum of individualized suspicion" that the CSLI will contain evidence of the criminal wrongdoing is necessary before a search or seizure may take place.[23]  Here, the Pen Register Order did not include a finding of individualized probable cause that Defendant's CSLI would contain evidence that Defendant committed the offenses charged.  Instead, the Pen Register Order merely included a finding that the evidence would be helpful to an ongoing criminal investigation.  Accordingly, in light of the recent holding in *Carpenter*, Defendant's CSLI was unlawfully obtained.

### III. Defendant is Not Entitled to a New Trial because Defendant's Guilt was Established Beyond a Reasonable Doubt Despite Exclusion of the CSLI Evidence.

The interest of justice does not entitle Defendant to a new trial.  At trial, the State presented the testimony of numerous witnesses as well as recordings of prison phone calls placed by Defendant.

It was established that Defendant and Clifton Thompson had been introduced by a mutual friend known as "Six," who testified as a witness at trial.  The evidence established that Defendant and Clifton Thompson engaged in drug dealing on behalf of other persons who did not testify.  On the day of the homicide, Defendant and Clifton Thompson had been communicating through Six.  Defendant wanted a

---

[22] *Carpenter*, 138 S.Ct. at 2221.
[23] *Id.* (citing *Martinez-Fuerte*, 428 U.S. 543 at 560-61).

9

refund for "moldy weed" and Clifton Thompson was trying to placate Defendant without actually refunding the money. The phone calls increased throughout the day in frequency and escalated in hostility. Accordingly, a motive for the fatal confrontation was established beyond a reasonable doubt.

The evidence also placed Defendant at the scene of the homicide. Some of this evidence was indirect or circumstantial. Direct evidence of a credible eyewitness also placed Defendant at the scene and identified Defendant as the shooter. Specifically, the State presented various accounts by Six, including an audio/video recording at the scene by an officer's body camera; investigative interviews with officers; an affidavit in which Six contradicted his prior statements; and testimony as a witness at a trial.[24] The Court found Six's statements at the scene and shortly thereafter to be credible and did not find Six's later statements to be credible.[25] Six's reluctance to testify was explained, at least in part, by his own

---

[24] Several out-of-court statements were presented pursuant to 11 *Del. C.* § 3507.

[25] This Court was the trier of fact. As fact-finder, the Court followed the direction that we regularly give to our juries when assessing the evidence and the credibility of witness testimony:

> I must judge the believability of each witness and determine the weight to be given to all trial testimony. I considered each witness's means of knowledge; strength of memory and opportunity for observation; the reasonableness or unreasonableness of the testimony; the motives actuating the witness; the fact, if it was a fact, the testimony was contradicted; any bias, prejudice or interest, manner of demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the believability of the testimony. After finding

description of "repercussions from both sides." The evidence established beyond a reasonable doubt that Defendant was present at the scene, and that Defendant was the shooter. Accordingly, it was established beyond a reasonable doubt that Defendant had opportunity and means to commit the crime.

Moreover, the State presented credible evidence of Defendant's consciousness of guilt.[26] The evidence included the testimony of one of Defendant's paramours with whom Defendant spent several days after the homicide hiding out in a Dover motel and who was present when Defendant was arrested in that motel room.[27] The reluctant testimony of this witness at trial was not consistent with her prior statements to police which were presented in accordance with 11 *Del. C.* § 3507. The Court found the out-of-court statements, including that Defendant was

---

some testimony conflicting by reason of inconsistencies, I have reconciled the testimony, as reasonably as possible, so as to make one harmonious story of it all. To the extent I could not do this, I gave credit to that portion of testimony which, in my judgment, was most worthy of credit and disregarded any portion of the testimony which, in my judgment, was unworthy of credit.

*Dionisi v. DeCampli,* 1995 WL 398536, *1 (Del. Ch. June 28, 1995).
[26] *See Church v. State,* 2010 WL 5342963, at * 2 (Del. Dec. 22, 2010) (noting that a defendant's refusal to submit to testing may be used to show consciousness of guilt).
[27] *Robertson v. State,* 41 A.3d 406, 409 (Del. 2012) (finding the trial court's instruction on flight appropriate where the evidence reasonably supported an inference that a co-defendant evaded arrest because of a consciousness of guilt); *Thomas v. State,* 467 A.2d 954, 958 (Del. 1983) (explaining that the defendants' flight upon recognition of the police approaching supports a rational inference of consciousness of guilt).

hiding from police and knew that he was wanted, to be more credible. In addition to Defendant's flight, the State also presented credible evidence that Defendant tried to influence the testimony presented at trial by pressuring witnesses not to testify and/or to change their statements implicating Defendant.[28] Specifically, numerous prison calls were introduced into evidence in which Defendant orchestrated three-way calls through his paramour, discussing witnesses' testimony and dictating the substance of an affidavit for Six to contradict Six's earlier statements that Defendant was at the scene and was the shooter. The evidence of Defendant's evasion of arrest and efforts to influence the testimony of witnesses established Defendant's consciousness of guilt.

On the other hand, the CSLI evidence presented at trial was not especially probative in that there was ample room for interpretation of the evidence.[29] To the extent the CSLI evidence placed Defendant at the scene, it was cumulative of the testimony of witnesses and of circumstantial evidence. Even when excluding

---

[28] *United States v. Smith*, 2003 WL21061232, at *4 (3d Cir. May 3, 2003); *State v. Guerrero*, 803 F.2d 783, 786 (3d Cir. 1986) (noting that death threats made to a testifying witness are "highly probative of consciousness of guilt."). *See also Lovett v. State*, 516 A.2d 455, 469 (Del. 1986) ("A defendant's efforts. . . to influence or alter the testimony of a prospective witness is relevant to. . . consciousness of guilt.") (quoting *Goldsmith v. State*, 405 A.2d 109, 114 (Del. 1979)).
[29] Defendant's cross-examination of the State's expert witness demonstrated the limits of this evidence and established there were multiple ways to interpret the evidence.

Defendant's CSLI, the verdicts of guilty are supported by the great weight of the evidence.

The Court concluded that the evidence established that Defendant caused the death of Clifton Thompson but that it was not established beyond a reasonable doubt that Defendant acted intentionally. Instead, the Court found that it was established beyond a reasonable doubt that Defendant meant to cause serious physical injury to Clifton Thompson and that, by shooting him, Defendant used such means that a reasonable person would think likely to cause death. Accordingly, the Court found Defendant guilty of the lesser-included offense of Manslaughter. The evidence also established Possession of a Firearm During the Commission of a Felony. With respect to the two Person Prohibited charges, the State presented evidence that Defendant was prohibited from possession, custody, or control of a firearm and/or ammunition as the result of the certified record of Defendant's prior felony conviction presented during trial.

Therefore, assessing the evidence presented, the credibility of witness testimony, and the inferences drawn from the direct evidence, the Defendant's guilt was established beyond a reasonable doubt even without considering the CSLI evidence presented at trial and without drawing any inferences from that evidence.

## CONCLUSION

While Defendant is entitled to the retroactive applicability of the recently issued *Carpenter* decision, and even though the Pen Register Order used to obtain Defendant's CSLI was beyond the scope of the Pen Register Statute and was insufficient under *Carpenter* as it did not include a finding of individualized probable cause, Defendant is not entitled to a new trial. Without considering the CSLI evidence and without drawing any inferences from the CSLI evidence, Defendant's guilt was established beyond a reasonable doubt for the crimes of Manslaughter, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. The interest of justice does not require that Defendant be granted a new trial.

**NOW, THEREFORE, this 13th day of June, 2019, Defendant's Motion for New Trial is hereby DENIED.**

**IT IS SO ORDERED.**

The Honorable Andrea L. Rocanelli

14